## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

WEI WANG,
and individually and on behalf of all
others similarly situated,

                Plaintiffs,

v.

TD AMERITRADE, INC.,
TD AMERITRADE FUTURES & FOREX LLC
dba THINKORSWIM,

                Defendants.

**CLASS ACTION**
**JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

Plaintiff, WEI WANG, files this class action complaint individually and on behalf of all others similarly situated against Defendants, TD AMERITRADE and TD AMERITRADE FUTURES AND FOREX, LLC (TDFF) dba THINKORSWIM (TOS) and alleges as follows.

## <u>INTRODUCTION</u>

1.    Plaintiffs assert this action pursuant to Section 6b(e)3 of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 9, *et seq.*, and 17 C.F.R. Sec. 180.1 of the regulations promulgated pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), on behalf of themselves and all similarly-situated customers Of TD AMERITRADE ("TDA")and TD AMERITRADE FUTURES AND FOREX LLC ("TDFF") also doing business as THINKORSWIM ("TOS").

2. TDA/TDFF engaged in acts, practices, and a course of business that operated recklessly as a fraud or deceit upon Plaintiffs and the class. As described in detail below, TDA/TDFF mishandled Plaintiff's and class members futures and options investments on April 20, 2020, in that TDFF: i) failed to provide material information to Plaintiffs regarding the possibility of the price of their NYMEX Light Sweet May 20 Crude Oil Futures contracts (May 20 Crude Oil) going to a price of zero; ii) failed to provide Plaintiffs a way to exit, roll, modify or offset their long positions in May 20 Crude Oil; iii) failed to liquidate Plaintiffs' and class members' futures and options on futures investments in a reasonable manner on April 20, 2020 when May 20 Crude Oil fell to a price of zero and proceeded to trade into negative prices; and iv) liquidated plaintiffs' positions in a commercially unconscionable manner.

3. While Plaintiffs recognize that TDA/TDFF had discretion to liquidate, TDA/TDFF did not have discretion to liquidate in the reckless and commercially unreasonable way that it did. TDA/TDFF knew about the potential for the markets' volatile condition – including the possibility that the price of the May 20 Crude oil contract could trade into the negative, and that the crude oil contract becomes more volatile during the delivery period - everything it needed to exercise its discretion to liquidate in an active and volatile market in a reasonable manner.

4.   Yet TDA/TDFF recklessly liquidated Plaintiff's long crude oil position, causing thousands of dollars in losses to Plaintiff and other class members-losses that could have been significantly reduced or completely avoided.

5.   TDA/TDFF did not i) take action to alert its customers to the possibility that the price of May 20 Crude Oil Contract could go to zero; ii) prepare its trading systems to be able to accept trades if the price of the May 20 Crude Oil contract declined to zero and into negative prices or, alternatively provide a way for the customers to place orders manually or through a separate vehicle, since its automated trading systems could not accept negatively priced Crude Oil orders; and, finally iii) take action to promptly liquidate positions in the May 20 Crude Oil contracts in accounts which became under-margined when the May 20 Crude Oil contract declined to zero and into negative prices, causing clients' accounts to lose thousands of dollars and in some instances incur debit balances.

6.   TDA/TDFFs' failure to provide its clients with material information, and its failure to liquidate its client's positions in a commercially reasonable manner [promptly] also violated the implied covenant of good faith and fair dealing contained in its Futures Client Agreement.

7.   TDA/TDFF's reckless actions make them liable for tens of millions in actual damages incurred by Plaintiffs and the class.

**JURISDICTION AND VENUE**

8.  This Court has subject matter jurisdiction over federal claims pursuant to
    28 U.S.C. § 1331. the CEA, 7 U.S.C. Sec. 25(c).  The Court also has subject
    matter jurisdiction under 28 U.S.C. Sec. 1332(d) because (i) the matter in
    controversy exceeds $75,000, exclusive of interest and costs; ii) there are
    members of the proposed class who are citizens of a different state than
    Defendants; and (iii) there are in aggregate more than 25 members of the
    proposed class

9.  This Court has personal jurisdiction of the Defendant because it
    systematically operates, conducts, and engages in and carries out a
    business or business venture in Chicago Illinois.

10. Venue is proper in this District pursuant to & U.S.C. Sec. 25(c) because the
    Defendants are found and transact business in this District. Venue is
    proper in this Court pursuant to 28 U.S.C. Sec. 1391(b)(1) because TDFF is
    subject to personal jurisdiction in the state of Illinois with respect to this
    civil action, and in this district

**PARTIES**

11. Plaintiff Wei Wang is an individual and resident of the state of Utah.  He
    was a client of TDFF at all times relevant throughout the class period.

12. TDFF is a financial services company and affiliate of TDA.  TDFF acts as a
    commodities broker and is registered as a futures commission merchant

4

(FCM) with the Commodity Futures Trading Commission (CFTC) and is a member of the National Futures Association (NFA). TDFF conducts futures business under the dba ThinkOrSwim and is engaged in providing futures execution services to clients of TDFF. At all times TDFF conducted business in this District where it provided services to Plaintiffs.

13. TD Ameritrade Inc. is a registered brokerage and registered investment advisor that is listed on the NASDAQ under the ticker symbol, AMTD.

**FACTUAL BACKGROUND**

A. **Relevant Statutes and Rule**

14. 7 U.S.C. **§** 6b(e)3 makes it unlawful to engage in an act that operates as a fraud or deceit in connection with the making of an options contract:

> It shall be unlawful for any person, directly or indirectly,…in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery (or option on such a contract), …to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

15. 7 U.S.C. § 9, *et seq*, establishes that it is illegal to employ or engage in any swap, or contract of sale, of any commodity in interstate commerce, to provide false information regarding the same, or to engage in false or fraudulent reporting, of the same. It also gives the administrative agencies

the power to create specific regulations for enforcement. 17 C.F.R. § 180.1 was promulgated under this statute.

16. 17 C.F.R. §180.1,a rule promulgated by the CFTC under Dodd-Frank states:

> (a) It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: . . .
>
> (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;
>
> (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person; or,
>
> (4) Deliver or cause to be delivered, or attempt to deliver or cause to be delivered, for transmission through the mails or interstate commerce, by any means of communication whatsoever, a false or misleading or inaccurate report concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce, knowing, or acting in reckless disregard of the fact that such report is false, misleading or inaccurate. Notwithstanding the foregoing, no violation of this subsection shall exist where the person mistakenly transmits, in good faith, false or misleading or inaccurate information to a price reporting service.

17. Section 25 of the CEA creates a private right of action for violations of Sections 6b(e). Section 25(a)(1)(B) states that:

> [a]ny person…who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages…caused by such violation to any person-…who made through such person any contract of sale of any commodity…; or who deposited with or paid to such person money…in connection with any order to make such contract….

18.     Section 25 also creates a private right of action for violations of Rule 180.1. Section 25(a)(1)(D) states that:

> [a]ny person…who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages…caused by such violation to any other person- …who purchased or sold a contract [of sale of any commodity for future delivery (or option on such contract or any commodity)] if the violation constitutes - …the use or employment of, or an attempt to use or employ, in connection with …a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, manipulate device or contrivance in contravention of such rules and regulations [promulgated pursuant to Dodd-Frank]…

**B. TDFF Accounts**

19.     To invest in and trade futures and options on futures with TDFF, the investor is required to open futures account by entering in a Futures Client Agreement with TDFF.  A copy of the Futures Client Agreement is attached as Exhibit A.

### C. Plaintiffs Purchase Futures and Options on Futures on the May 20 NYMEX Light Sweet Crude Oil Contract

20. Plaintiffs are individual investors with brokerage accounts at TDFF. The Plaintiffs' investments at issue here, are futures and options on futures contracts in the May NYMEX Light Sweet May 2020 Crude Oil contract (herein referred to the "May 20 Crude Oil contract").

21. A futures contract is a legally binding agreement to buy or sell a standardized asset on a specific date or during a specific month. "Trading in futures contracts is facilitated through a futures exchange.

22. The fact that futures contracts are standardized and exchange-traded makes these instruments indispensable to commodity producers, consumers, traders, and investors.

23. An option on a futures contract gives the option holder the right, but not the obligation, to buy or sell a specific futures contract at some point in the future at a specified price.

### D. May 2020 NYMEX Light Sweet Crude Oil Contract

24. On April 20, 2020, Plaintiffs' accounts contained substantial long positions (that is, he owned futures and/or options in May 2020 NYMEX Light Sweet Crude Oil futures contracts and/or options on the May 2020 NYMEX Light Sweet Crude Oil futures contracts through TDFF). The NYMEX Light Sweet Crude Oil futures contract is traded on the Chicago

8

Mercantile Exchange ("CME") under trading symbol CL, Minimum Tick Size: $0.01 per barrel, worth $10.00 per contract. This contract is deliverable meaning that at the expiration of the contract month crude oil is physically delivered to the buyer of the contract.

25. Plaintiffs accounts also held substantial long positions in *E-Mini* Light Sweet Crude Oil futures (QM) and options on these contracts through TDFF. The E-Mini Light Sweet Crude Oil futures contracts are tied to the NYMEX Light Sweet Crude Oil futures contract, but are smaller, in that, the E-mini Light Sweet Crude Oil futures contracts are traded in 0.025 increments and the full-sized Light Sweet Crude Oil futures are traded in 0.01 increments. The trading symbol for the contract is QM and is traded on the CME. The E-mini contract is financially settled upon expiration of the contract – i.e. there is no physical delivery of crude oil for purchasers of the contract. The settlements in the E-mini Crude Oil (QM) futures contracts are derived directly from the settlements of the regular sized Crude Oil (CL) futures contracts, rounded to the nearest tradable tick.

26. NYMEX Sweet Light Crude Oil futures and options, as well as the smaller - mini contracts, trade actively on the Chicago Mercantile Exchange and their prices change throughout the trading session in response to economic events and market activity.

27. On April 8, 2020, the Chicago Mercantile Exchange (CME) the commodity exchange on which Crude Oil and E-mini Crude Oil futures and options are

traded and cleared, sent out a regulatory advisory, the purpose of which was "to let the market know that CME Clearing is ready to handle the situation of negative underlying prices in major energy contracts and [we want] to give all of our clearing firms, customers, and partners a view into what the CME Clearing plan is so that each of our partners can do their own respective planning for this potential situation.

28. On April 15, 2020, the CME sent out another advisory to clearing firms, CFO, back-offices, and futures commission merchants that they had provided an environment where firms could test negative prices.

29. On the morning of April 20, 2020, the CME issued a third warning that oil prices could go negative, leaving TDA/TDFF most of the trading day to liquidate positions, increase variation or maintenance margin or communicate this to all its customers. It did nothing.

30. On April 20, 2020, the May E-mini crude oil futures contract (symbol /QMK20 on TD Ameritrade's platform) gradually declined throughout the day and then dropped from $0 to -$37.62 during the last 15 minutes of trading before settlement and expiration. (Exhibit B)

31. Nowhere in any risk disclosure agreement, nor in its Futures Client Agreement, provided by TDFF to its customers or traders does TDFF warn that negative prices can occur.

32. At no time subsequent to April 8, 2020 and before occurrence of negative oil prices on April 20, 2020, did TD Ameritrade or TDFF institute

substantially greater margin requirements for all its traders and clients knowing, as it knew, that negative prices, and hence potentially infinite risk, was a real possibility.

33. At no time subsequent to April 8, 2020 and before occurrence of negative oil prices on April 20, 2020, did TD Ameritrade or TDFF decide to mitigate losses by stopping trading at zero, or forcing liquidations at zero.

34. TD Ameritrade/TDFF promotes investing in futures as a way of diversification and leverage, and promoted the trading of cash settled futures in order to entice the retail customer with the idea that settlement risk could be avoided. Futures is touted as an investment suitable for the individual retail investor at TD Ameritrade/TDFF in their individual and IRA accounts.

35. TDFF Ameritrade failed to live up to its risk disclosure document (Exhibit B) where it states "multiple, robust risk management in process" and failed to liquidate client positions even when their account equity fell below zero.

36. During that period, clients of TDFF were not able to place orders in the May 20 Crude Oil products and therefore were not able to modify, offset or exit their positions. The automated order platform for TDFF did not recognize negative pricing in the contract and when attempting to place an order in the May 20 Crude Oil contract once the price continued to decline past zero, the platform's message stated: "FUTURE ORDERS MUST HAVE A POSITIVE LIMIT PRICE."

37. TDFF was unprepared for the market events of 4/20/20 and did not even provide a valid quote below zero on its platform.

38. Additionally, Plaintiff's accounts were not closed out promptly when the price fell below zero and the accounts did not contain enough cash to maintain the positions. Instead, the long Crude Oil position was permitted to remain in the account long after the account was under-margined, which in cases of certain Plaintiffs was until all cash was lost in the account resulting in a debit balance. In fact, in Plaintiff Wang's account, the account ended the day with a loss on 6 long May Crude Contracts of -165,602.50- having begun the day with a positive balance of $60,230.79

39. Generally, in the futures market, to mitigate risk, a certain amount of money must always be maintained on deposit when trading with a futures broker this is called margin. When a trader first enters a futures position, the trader must post the initial margin requirement. Once the position is established, the trader is held to a maintenance margin requirement, which is less than the amount of the initial margin requirement. If the equity in a customer's account drops below the maintenance margin requirement due to adverse price movement, the broker will issue a "margin call" to restore the customer's equity to the initial margin requirement.

40. The CFTC defines a margin call as a request from a brokerage firm to a customer to bring margin deposits up to initial levels.[i] If an account goes below the amount required to be posted as maintenance margin, then a

margin call is made, and the account must be replenished to bring the amount back up to the initial margin requirement, or an amount that may be required by the futures commission merchant during the trading day in order to maintain the trading position. If a margin call is not met within a short time frame, often within a business day, the position may be liquidated or closed.

41. According to the terms of TDFF's own risk disclosure statement (Exhibit C), it is stated that TD Ameritrade/TDFF will liquidate positions if they exceed the margins required. However, TDFF failed to abide by its policy on 4/20/20 with regards to oil. As a result of this failure, Plaintiff's account as well as accounts of other individual retail investor accounts ended with large negative balances which could have been avoided had TD Ameritrade acted in good faith and made an attempt to close out the positions on 4/20/20 when the accounts became under-margined or even when customer equity fell below zero.

42. At no time was Plaintiff Wang contacted by TDFF relating to a margin call nor to provide him the opportunity to offset his position, roll his position to the next contract month, or provide funds because he was under-margined.

43. TDFF did nothing when the price of May 20 Crude Oil hit zero and proceeded into negative pricing, knowing that Plaintiff Wang would not be able to place an order to exit the position or roll the position to the next contract month, and where Plaintiff's losses would have been limited –at

least to just over $10 per contract, or a loss of around $30,000 instead of a loss of -$165,602.50 Alternatively, TDFF could have liquidated Wang and the Class members when their accounts initially became, under-margined, thereby substantially mitigating if not eliminating losses.

44. The possibility of the contract going to zero should have been anticipated by TDFF [as an futures commission merchant responsible for the execution of Plaintiff's trades on CME] and TDFF should have alerted its clients particularly prior to the date of delivery, April 20th. To the extent that TDFF concluded that Plaintiff's positions became under-margined, TDFF should have closed Plaintiff's positions promptly.

45. Instead of taking either of the commercially reasonable alternatives outlined above, TDFF acted recklessly. It failed to take action to permit its clients the ability to place orders in the May 20 Crude Oil contract when the price touched zero and declined into negative pricing, and further, failed to liquidate Plaintiff's accounts promptly when the accounts became under-margined, but waited to do so long after the account became under-margined and sustained extreme losses leaving the account with a debit balance.

46. The failure of TDFF to act to mitigate investor losses by offsetting their positions promptly or within a reasonable time of the accounts becoming under-margined, or to contact clients to notify them of the fact the CL market was at zero and providing them with an option to exit, modify, offset

roll the position by placing an order via another means other than an automated order platform (which was not able to recognize negative pricing), caused severe losses to Plaintiffs and the class members who had long futures positions in the May Crude Oil contract.

47. In those accounts incurring debit balances, TDFF has sent letters demanding payment for such deficiencies.

48. TDA/TDFF knew or should have known about the possibility of the Crude Oil markets incurring negative pricing as it executed trades in these markets for clients cleared through CME; which had notified firms that the CL price had the potential to go to zero and to prepare for this possibility. TDFF failed to notify/advise their customers of material information regarding the crude oil markets, although it was clear based upon the CME's advisory that the contract had the potential to go to zero and to prepare for such an event. The omission of a material fact prevented Plaintiff from making an informed decision regarding the management of their positions in the Crude Oil contracts as they were not aware of the potential for loss in this market.

49. Upon information and belief, TDA/TDFF has settled with some trading customers and made them whole and offered other customers, including the Plaintiff some accommodation based upon the inability to execute a trade during the time prices were negative, or to call in an order to execute a trade and liquidate long positions.

50. TDFF has treated its customers differently. TD Ameritrade has chosen to credit the losses back to the accounts of some of its larger traders but not all its traders. This goes against the rules for impartial and fair treatment of customers

51. Any recovery of TDFF on any debit purportedly owed by Plaintiff is barred by TDFFs violations of 17 C.F.R. Sec. 180.1, as well as their breach of the covenant of good faith and fair dealing.

## CLASS ACTION ALLEGATIONS

52. Plaintiffs seek certification of a class of participants (the "Class") as follows: All persons, corporations, and other legal entities that held long futures positions (or short put positions) with TDFF on April 20, 2020, who were damaged by TDFFs failure to inform them of the possibility of the May 2020 Crude Oil futures contract going to zero or the forced sale or liquidation of their May 2020 Crude Oil futures or options positions on April 20, 2020; or who were unable to place orders to offset, modify or exit their May 20 Crude Oil futures or options position on April 20, 2020.

53. Excluded from the Class are Defendants, and their directors, officers, or employees.

54. This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, because it meets all the requirements of Rule 23(a)(1-4), including the numerosity, commonality, typicality and

16

adequacy requirements, and it satisfies the requirements of Rule 23(b)(3) in that the predominance and superiority requirements are met.

55. Numerosity. The Class is so numerous that individual joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe that at least 60 geographically-dispersed Class members transacted in Crude Oil futures or options through TDFF and lost millions of dollars during the Class Period.

56. Commonality. There are numerous questions of fact or law that are common to Plaintiffs and all the members of the Class. Common issues of fact and law predominate over any issues unique to individual Class members. Issues that are common to all class members include but are not limited to the following:

    a. Whether Plaintiffs and class members held long futures positions or short put option positions in May 20 Crude Oil contracts in accounts at TDFF on April 20, 2020;

    b. Whether Plaintiffs and class members entered into the Futures Agreement with TDFF;

    c. Whether TDFF liquidated Plaintiffs' and class members long futures positions May 20 Crude Oil or short put option positions in the contract on April 20, 2020;

    d.   Whether Plaintiffs were unable to (due to the inability of TDFFs automated trading system to accept an order) exit, modify or offset their long futures positions or short options positions in the May 20 Crude Oil contracts for their accounts when the contract hit the price of zero and after at approximately 12:00 p.m. on April 20, 2020;

    e.   Whether Plaintiffs were informed by TDFF of the possibility of the May 20 Crude Oil contract declining to a price of zero before April 20, 2020.

    f.   Whether TDFFs liquidation of Plaintiffs' May 20 Crude Oil positions were reckless and commercially unreasonable and breached the TDFF Futures Client Agreement's implied covenant of good faith and fair dealing; and

    g.   Whether Plaintiffs and class members were damaged by the liquidation.

57.   <u>Typicality</u>.  Plaintiffs have claims that are typical of the claims of all the members of the Class.  Plaintiffs' claims and all of the class members' claims arise out of the same uniform acts and course of business employed by TDFF on April 20, 2020 and arise under legal theories that apply to the claims of Plaintiffs and all other members of the Class.

58.   <u>Adequacy of Representation</u>.  Plaintiffs will fairly and adequately represent the interests of the members of the Class.  Plaintiffs do not have claims that are unique to Plaintiffs, nor are there defenses unique to Plaintiffs that

could undermine the efficient resolution of the Class' claims. Further, Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in class action litigation, to represent them. There is no hostility between Plaintiffs and the unnamed class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

59. <u>Predominance</u>. Common questions of law and fact predominate over questions affecting only individual class members. The only individual issues likely to arise will be the exact amount of damages recovered by each class member, the calculation of which does not bar certification.

60. <u>Superiority</u>. A class action is superior to all other feasible alternatives for the resolution of this matter. Individual litigation of multiple cases would be highly inefficient and would waste the resources of the courts and of the parties.

61. <u>Manageability</u>. This case is well suited for treatments as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented on a class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

62. Defendants have acted similarly with respect to the entire Class by uniformly subjecting Plaintiffs and the Class to the course of business described above.

**COUNT 1**
**Violations of CEA, 7 U.S.C. § 9, and 17 C.F.R. Sec. 180.1**

63.    Plaintiffs incorporate the allegations of paragraphs 1 through 62 as if fully
set forth herein.

64.    TDFF failed to notify/advise their customers of material information
regarding the crude oil markets, that it had the potential to go to zero,
although it was clear based upon the CME's advisory that the contract
had the potential to go to zero and to prepare for such an event.  The
omission of a material fact prevented Plaintiff from making an informed
decision regarding the management of their positions in the Crude Oil
contracts as they were not aware of the potential for loss in this market.

65.    Furthermore the failure of TDFF to act to mitigate investor losses by
offsetting their positions promptly or within a reasonable time of the
accounts becoming under-margined, or to contact clients to notify them of
the fact the CL market was at zero and providing them with an option to
exit, modify, offset roll the position by placing an order via another means
other than an automated order platform (which was not able to recognize
negative pricing), TDFF caused severe losses to Plaintiffs and the class
members who had long futures positions in the May Crude Oil contract.
And for those accounts incurring debit balances TDFF has sent letters
demanding payment for such deficiencies.

66.    By doing so, Defendants violated 180.1 in that its conduct was reckless or
intentional in violation of 17 C.F.R. §180.1(a)(3)

**COUNT II**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

67. Plaintiffs incorporate the allegations of paragraphs 1 through 66 as if fully set forth herein.

68. Plaintiffs and class members each signed the Futures Agreement, which contains a provision giving TDFF discretion to liquidate Plaintiffs and class members May 20 Crude Oil long futures positions and short puts positions.

69. Implicit in that provision is a covenant of good faith and fair dealing that TDFF will exercise its discretion to liquidate in a good faith and in a commercially reasonable manner.

70. TDFF acted unreasonably when it failed to promptly or within a reasonable time, liquidate Plaintiff's positions when the accounts became under-margined leading to excessive losses and in many cases deficit balances in the accounts on April 20, 2020.

71. Additionally, the Futures Agreement provides that TDFF will execute orders on behalf of its clients which states, "All orders placed by Client may be executed on any exchange or other market where such business is transacted by TD Ameritrade Futures & Forex or its agent in the discretion of the Firm or such agent, deemed to be most desirable, unless otherwise instructed."

72. Furthermore TDFF failed to provide Plaintiff with the ability to place an order to exit, modify, offset roll the position by placing an order via another means other than an automated order platform (which was not able to

21

recognize negative pricing), causing severe losses to Plaintiffs and the class

members who had long futures positions in the May Crude Oil contract

73. By doing so, TDFF breached the Futures Client Agreement's implied

covenant of good faith and fair dealing

74. Plaintiffs and class members have been damaged as a result.

## COUNT III
## Violation of CEA Section 6b(e)3

75. Plaintiffs incorporate the allegations of paragraphs 1 through 74 as if fully

set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Wei Wang, on behalf of themselves and all similarly

situated customers of TD Ameritrade Futures and Forex LLC dba ThinkorSwim,

respectfully demand judgment against Defendants for:

(a) Damages as set forth above, plus all other relief as the Court may deem

appropriate;

(b) That the Court certify this lawsuit as a class action under Rules 23(a) and

(b)(3) of the Federal Rules of Civil Procedure, that Plaintiffs be designated

as class representatives and that Plaintiffs' counsel be appointed as Class

counsel;

(c)    That the Court award Plaintiffs and the Class damages against Defendants for their violations of the Commodity Exchange Act;

(d)    That the Court award Plaintiffs and the Class their costs of suit, including reasonable attorneys' fees and expenses, including expert fees, as provided by law;

(e)    That Defendants be permanently enjoined and restrained from continuing to expose retail investors and traders to unlimited risk in their futures accounts;

(f)    That the Court award Plaintiffs and the Class prejudgment interest at the maximum rate allowable by law; and

(g)    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

Dated: July 9, 2020
Chicago, Illinois

Respectfully submitted,

/s/ R Tamara de Silva
R Tamara de Silva (lead counsel)
Cheryl Fitzpatrick-Smith
Law Offices of R Tamara de Silva, LLC
980 N Michigan Avenue, Suite 1400
Chicago, IL 60611

Tel: (312) 913-9999
Email: tamara@desilvalawoffices.com
        cheryl@futurescomplianceinc.com


<u>/s/ Jonathan Lubin</u>
Jonathan Lubin
8800 Bronx Ave., Suite 100H
Skokie, IL 60077
Tel: (773) 954-2608
Email: jonathan@lubinlegal.com

*Counsel for Plaintiffs*

---

[i] https://cftc.gov/LearnAndProtect/EducationCenter/CFTCGlossary/glossary_m.html#margin

**EXHIBIT A**



# Futures Client Agreement

TD Ameritrade Futures & Forex LLC

600 W. Chicago Ave. Suite 100 ▪ Chicago, IL 60654-2597

Phone: 866-839-1100 ▪ Fax: 773-435-3232

In consideration of the agreement of TD Ameritrade Futures & Forex LLC ("TD Ameritrade Futures & Forex" or "the Firm"), a registered Futures Commission Merchant ("FCM") with the CFTC, to act as broker for the undersigned ("Client") in the purchase or sale of futures contracts and options on futures (hereinafter, "Commodity Interests"), in the Client's account for trading futures ("Account") Client agrees, in respect to all Accounts that Client now has or may at any future time have with TD Ameritrade Futures & Forex, or its successors, including Accounts from time to time closed and then reopened, as follows:

## 1. AUTHORIZATION AND ACKNOWLEDGMENTS

a. Client understands that TD Ameritrade Futures & Forex has not undertaken and will not undertake an independent evaluation of whether Commodity Interests trading or any transaction entered into by Client hereunder is appropriate for Client, and TD Ameritrade Futures & Forex is relying solely on Client's representations in this regard. All transactions effected for the Account and all fluctuations in the market prices of Commodity Interests or other property carried in the Account are at Client's risk, and Client shall be solely liable for such risks under all circumstances. Client acknowledges that Client is willing and financially able to sustain any losses resulting therefrom, and Client's unconditional obligation to pay TD Ameritrade Futures & Forex the amount of any such losses.

b. Client authorizes TD Ameritrade Futures & Forex to (i) purchase and sell Commodity Interests upon Client's oral, written, or electronic instructions; and (ii) employ any clearing broker, executing broker, or floor broker, as Client's agents in connection with the execution, clearing, carrying, delivery, and/or settlement of any such transactions. The Firm shall not be responsible to Client in any case for an executing broker's or floor broker's inability to execute orders, nor shall TD Ameritrade Futures & Forex be responsible in any way for any executing broker or floor broker selected by Client. All orders placed by Client may be executed on any exchange or other market where such business is transacted by TD Ameritrade Futures & Forex or its agent in the discretion of the Firm or such agent, deemed to be most desirable, unless otherwise instructed.

c. Client shall be bound by, and TD Ameritrade Futures & Forex may rely on and act in accordance with, any oral or written instructions which TD Ameritrade Futures & Forex believes, in good faith, to have been given by Client or an individual authorized to act on Client's behalf, including but not limited to any individual identified in writing by Client to TD Ameritrade Futures & Forex as authorized to act on Client's behalf.

d. Transactions shall be subject to the constitution, by-laws, rules, regulations, customs, and usages of the exchange or market where executed (and of its clearing house if any) and to any applicable Federal or State law, including but not limited to the provisions of the Commodity Exchange Act (the "Act"), as amended, and the rules and regulations thereunder (collectively, "Applicable Law"). TD Ameritrade Futures & Forex shall not be liable to Client as a result of any action taken by the Firm or its agent to comply with any Applicable Law. Any failure by TD Ameritrade Futures & Forex to comply with any Applicable Law shall not relieve Client of any obligations under this Agreement nor be construed to create rights thereunder in favor of Client against the Firm.

e. Client further acknowledges and agrees that: (i) Client is exercising its own judgment and decision with respect to any instructions given to TD Ameritrade Futures & Forex to execute transactions for the Account, without reliance on any information or other statements that may be made by TD Ameritrade Futures & Forex, and the Firm makes no representation or warranty as to the value, merits, or suitability of any order placed or transaction undertaken by Client; (ii) TD Ameritrade Futures & Forex shall have the right to limit the size and number of open contracts (net or gross) held in the Account, refuse the acceptance of orders for new positions, and/or require Client to reduce open positions; (iii) TD Ameritrade Futures & Forex has no fiduciary obligations to Client, and the duties and obligations of the Firm to Client are limited to those expressly set forth in this Agreement; (iv) TD Ameritrade Futures & Forex is acting solely as Client's broker in accordance with the terms of this Agreement and is not otherwise acting as an agent or a fiduciary to Client and has no discretionary authority or control over the Account; (v) the Firm has no financial or other obligations as a principal to Client under the terms of this Agreement in connection with any transaction in Commodity Interests executed, cleared, or carried by TD Ameritrade Futures & Forex for Client; (vi) TD Ameritrade Futures & Forex may, in its sole discretion, decline to accept from other brokers Commodity Interests executed by such brokers on an exchange for Client and proposed to be "given up" to the Firm for clearance or carrying in the Account; and (vii) Client will, following a request by the Firm, promptly provide to TD Ameritrade Futures & Forex copies of its latest audited financials (if applicable) and any such other financial or other information as the Firm may reasonably request.

## 2. LIEN AND SECURITY INTEREST

Client grants TD Ameritrade Futures & Forex a first lien and security interest in all monies, open positions in Commodity Interests, documents representing title to commodities such as warehouse receipts and the commodities represented thereby and any other property of Client (either individually or jointly with others) now or in the future held by the Firm in the Account or otherwise in the Firm's possession or control for any purpose, including safekeeping (collectively, the "Collateral"), to secure payment and discharge of all obligations of Client to TD Ameritrade Futures & Forex or any affiliate of the Firm, which Collateral is subject to the general lien of, and right of set-off by, TD Ameritrade Futures & Forex for any and all such obligations. Client agrees to execute any and all documents including Uniform Commercial Code financing statements, as deemed necessary or appropriate by TD Ameritrade Futures & Forex to evidence or perfect its security interest in any Collateral. Client has not granted and will not grant a security interest in the Collateral or the Account (other than the security interest granted to the Firm hereunder) to any other party without TD Ameritrade Futures & Forex's written consent. Except as prohibited by Applicable Law, all Collateral now or hereafter held or carried by the Firm for Client may, from time to time, without notice to Client, be pledged, hypothecated, loaned, or invested by the Firm to or with others, separately or with any other property. TD Ameritrade Futures & Forex shall not be required to retain in its possession for delivery a like amount of, or to pay interest or to account to Client for any profits on, such property. All transactions for or on Client's behalf may be included in a single Account whether or not such transactions are segregated on TD Ameritrade Futures & Forex records into separate Accounts, either severally or jointly with others.

## 3. AUTO SWEEP AND TRANSFERS

To open an account, Client understands that TD Ameritrade Futures & Forex requires that a Client first have an Account for trading securities ("Securities Account") with its affiliate, TD Ameritrade, Inc. established. Client understands and agrees that if available cash is held in the Account at the end of the trading day, such available cash is automatically swept from the Account held at TD Ameritrade Futures & Forex, to his or her Securities Account held at TD Ameritrade Futures & Forex's affiliate, TD Ameritrade Clearing, Inc. Regardless of where available cash is held, applicable SEC and CFTC rules require proper segregation of Client assets from firm assets. Please note that transferring available cash from the Account to a Securities Account will result in the Client not receiving preferential treatment afforded for funds held in a futures account pursuant to Part 190 of the CFTC's regulations and the U.S. Bankruptcy Code. Client funds held in a Securities Account for the purpose of purchasing securities or held in a portfolio margin account carried as a Securities Account are protected by SIPC. Client should refer to the Securities Account Client Agreement or the SIPC website, http://www.sipc.org/ for further information regarding SIPC coverage. Client may elect to not have available cash transferred from the Account to a Securities Account by contacting TD Ameritrade Futures & Forex New Account Department at 600 W. Chicago, Suite 100, Chicago, IL 60654 or via email at futuressupport@tdameritrade.com.

As permitted by applicable law, Client agrees that TD Ameritrade Futures & Forex may, in its sole and absolute discretion and without prior notice to Client, transfer excess funds or collateral from one Client Account to any other Account that Client maintains with TD Ameritrade Futures & Forex (including any of the Securities Accounts custodied by TD Ameritrade Futures & Forex's affiliate, TD Ameritrade Clearing, Inc.) in such amount as in TD Ameritrade Futures & Forex's judgement may reasonably be required to avoid margin calls or to reduce or satisfy any deficit in the account to which the funds were transferred. TD Ameritrade Futures & Forex, however, is not obligated to do so.

## 4. MARGINS

TD Ameritrade Futures & Forex shall have the right to set and revise margin requirements and to limit, without prior notice to Client, the number of positions which Client may maintain or acquire through TD Ameritrade Futures & Forex. Client will at all times maintain collateral and margin for all Accounts as from time to time may be required by TD Ameritrade Futures & Forex in its sole discretion or demanded by Applicable Law.

## 5. CLIENT OBLIGATIONS

Client agrees to pay promptly on demand any and all sums due to TD Ameritrade Futures & Forex for monies advanced including any unsecured debit balance, with interest thereon at 1% over the prime rate published in The Wall Street Journal. Client agrees to pay when due, TD Ameritrade Futures & Forex's charges for commissions at rates established between the Firm and Client and for related fees and charges as a result of, or related to, the transactions effected under this Agreement, and for other services offered and accepted in connection with the Account. Further, Client undertakes, at any time upon TD Ameritrade Futures & Forex demand, to discharge all obligations to the Firm, or, in the event of a closing of any of Accounts in whole or in part, to pay any deficiency owed, if any, including costs, damages, or attorney fees suffered or paid by TD Ameritrade Futures & Forex, directly or indirectly, in connection with such deficiency. In lieu of requiring the immediate discharge of any Client obligations, TD Ameritrade Futures & Forex may, in its sole discretion, demand security for such obligation and, if elected, for all future obligations in which event Client will either discharge all existing obligations to TD Ameritrade Futures & Forex or furnish security as the Firm demands, and, in that connection, execute and deliver such security agreements, financing statements, and other documents, informs prescribed or approved by TD Ameritrade Futures & Forex as shall be reasonably requested. Client agrees to maintain $1,500.00 Net Liquidating Value in Account at all times. TD Ameritrade Futures & Forex, without prior notice and in its sole discretion, reserves the right to raise Client's minimum Account Net Liquidating Value at any time.

## 6. LIQUIDATION OF POSITIONS

If the Account is under-margined or if TD Ameritrade Futures & Forex, in its sole discretion, determines that it is otherwise insecure with respect to Client's willingness or ability to fulfill his/her obligations hereunder, TD Ameritrade Futures & Forex may in its sole discretion and without prior notice to Client offset any of Client's open positions in Commodity Interests (including futures or options on futures) so as to eliminate such margin deficiency or insecurity, and Client shall remain liable to TD Ameritrade Futures & Forex for any loss or debit balance that results, without regard to (a) whether TD Ameritrade Futures & Forex has adhered to margin or other rules of any contract market, or (b) any other term of this Agreement. Likewise, to the extent permitted by Applicable Law, Client hereby authorizes TD Ameritrade Futures & Forex, without prior notice and in its sole discretion, to liquidate any assets held by TD Ameritrade Clearing, Inc. in a Securities Account to eliminate such margin deficiency or insecurity. This right to offset includes the right, if deemed appropriate in the exercise of the Firm's discretion, to buy and/or sell any related futures and/or options on futures or other property, including but not limited to the use of spreads, straddles, and/or off-exchange transactions, such as an exchange for physical or other cash transaction, including for the Firm's account, in order to effectuate such liquidation. It is understood that a prior demand or call or prior notice of the time and place of such sale or purchase shall not be considered a waiver of TD Ameritrade Futures & Forex's right to sell or buy without demand or notice as herein provided. Client shall remain liable for and shall pay to TD Ameritrade Futures & Forex immediately the amount of any deficiency in any Account of Client with the Firm resulting from any transaction described above. For purposes of this Client Agreement, a reasonable amount of time shall be deemed one hour or less, if in the Firm's sole discretion market conditions required that margin calls must be met in less than one hour.

## 7. LIMITATION OF LIABILITY; INDEMNIFICATION

a. Neither TD Ameritrade Futures & Forex nor its officers, directors, affiliates, and/or employees shall have any responsibility for compliance by Client with any law or regulation governing Client's conduct.

b. Neither TD Ameritrade Futures & Forex nor its officers, directors, affiliates, or employees shall be under any liability whatsoever for any loss or damage sustained by Client as a direct or indirect result of any services provided by the Firm hereunder or for any loss or damage resulting, directly or indirectly, from: (i) any failure or delay or default on the part of Client or any third party, including any custodian or exchange (including any clearinghouse), in providing accurate information or performing its functions; (ii) any event or circumstance beyond the reasonable control of TD Ameritrade Futures & Forex including, but not limited to, (A) any failure or defective performance of any communication, settlement, computer or accounting system or equipment; or (B) performance, non-performance, delays in the transmission or execution of any order due to suspension or termination of trading, the breakdown or failure of the system or of any other transmission system, electronic trading system, or communication facilities, or (C) any governmental, judicial, administrative, exchange, or regulatory or self-regulatory organization order, restriction, or ruling; (iii) strikes or similar labor action; or (iv) any reliance placed by Client on any market or other information supplied to Client by TD Ameritrade Futures & Forex, it being understood that any such information may be unverified and the Firm makes no representation or warranty as to the accuracy or

reasonableness of such information. In no event will TD Ameritrade Futures & Forex or its officers, directors, affiliates, or employees be liable hereunder to Client for consequential, incidental, or special damages, including damages for loss of profit or loss of trading opportunity.

c. In the event that TD Ameritrade Futures & Forex be a party, directly or indirectly, to any claim, dispute, or loss in connection with (i) transactions effected in the Account; (ii) Client's obligations or liabilities arising from the Account, (iii) this Agreement, (iv) Client's use of an electronic trading system of any exchange or other market, or (v) Client's violation of any third party's rights, including, but not limited to, copyright, patent, trademark, proprietary, and privacy rights, Client shall indemnify and reimburse TD Ameritrade Futures & Forex for all losses, damages, fines, penalties, and expenses incurred, including the Firm's reasonable attorney's fees and expenses. The Firm shall have the exclusive right to defend, settle, or compromise any claim or demand instituted by any third party against TD Ameritrade Futures & Forex or against the Firm and Client. Client hereby waives any and all rights Client may have independently to defend, settle, or compromise any such claims or demands and agrees to cooperate to the best of Client's ability with TD Ameritrade Futures & Forex with respect thereto, but the Firm may, in its sole discretion, authorize and require Client to defend, settle, or compromise any such claim or demand as TD Ameritrade Futures & Forex deems to be appropriate at Client's cost, expense, and liability. Client agrees to reimburse TD Ameritrade Futures & Forex on demand for any cost of collection incurred by the Firm in collecting any sums owing by Client under this Agreement and any cost incurred by the Firm in successfully defending itself against any claims asserted by Client, including all attorney's fees, interest, and expenses.

## 8. NOTICES AND CLIENT COMMUNICATIONS

a. Any notices and other communications may be transmitted to Client at the address, telephone number, or email address given herein, or at such other address or telephone number as Client hereafter shall notify TD Ameritrade Futures & Forex in writing. All notices or communications shall be deemed transmitted when telephoned, deposited in the mail, sent via facsimile, electronic transmission, or email by the Firm. Confirmations, purchase and sale statements, and account statements shall be deemed accurate unless written objection is transmitted via facsimile or email to TD Ameritrade Futures & Forex at 773.435.3232 or futuressupport@tdameritrade.com, such transmission to be made by Client immediately upon receipt of such notice.

b. **Electronic Signatures.** Client's use of electronic signatures to sign documents is legally binding in the same manner as if such documents had been manually signed. The use of an electronic version of these documents fully satisfies any requirement that they be provided in writing. If documents are signed electronically, Client represents to have the ability to access and retain a record of the documents. Client is responsible for understanding these documents and agrees to conduct business with TD Ameritrade Futures & Forex by electronic means. Client is obliged to review periodically the websites for changes or modifications.

c. **Consent.** By consenting to the electronic delivery of all information relating to my Account, Client authorizes TD Ameritrade Futures & Forex to deliver all communications by the following means: (1) by email at the email address specified by Client; (2) by posting the communication on the websites or other sites on the Internet where the communication can be read and printed; (3) by sending Client an email that includes a hyperlink to the websites or an address on the Internet where the information is posted, and can be read and printed; and (4) by sending Client a notice that directs Client to an address on the Internet or a place within the websites where the communication is posted and from which it can be read and printed. Such delivery will be an effective delivery to Client for the purposes of any Applicable Rules whether or the communications are accessed or reviewed. Although Client consents to electronic delivery, TD Ameritrade Futures & Forex may elect to deliver communications by other means which shall not affect Client's consent. Client agrees to notify TD Ameritrade Futures & Forex of any change in address. Client may revoke his consent to electronic delivery at any time and should contact TD Ameritrade at 866-839-1100 option 4 or futuressupport@tdameritrade.com to do so.

## 9. COMMUNICATION DELAYS

TD Ameritrade Futures & Forex shall not have any liability to Client for delays in the transmission, clearance, or confirmation of Client's orders due to mechanical, electronic, or computer failure or market congestion or illiquidity, or other causes beyond its control, nor shall it be liable for improper execution, clearance, or confirmation of Client's orders by persons who are not employees of TD Ameritrade Futures & Forex. The price at which an order is executed shall be binding notwithstanding the fact an erroneous report is made. An order, which was executed but in error reported as not executed, shall be binding. TD Ameritrade Futures & Forex shall have no liability to Client arising out of (a) Client's use of or reliance on information provided directly or indirectly through TD Ameritrade's website, whether in the nature of quotations or otherwise, (b) futures transactions not cleared through the Firm, or (c) Client's access to or use of third party websites (or other resources) linked to or otherwise incorporated into or referenced within TD Ameritrade's website.

## 10. ELECTRONIC TRADING

a. Client acknowledges that all orders, whether placed through the Firm's system, through a floor broker or otherwise, are at Client's sole risk. Client shall be solely responsible for all orders entered or attempted to be entered through Client's identifiers. Acceptance of an order for placement does not constitute an agreement or representation by TD Ameritrade Futures & Forex that there is sufficient margin in the Account to support the resulting position. Client acknowledges that the Firm may set minimum net liquidating equity for the Account. Client hereby acknowledges Client's responsibility to keep apprised of current margin requirements in connection with all trading activities, agrees to post all required margin for trades ordered by Client, and agrees to be liable for the losses incurred on all trades ordered by Client, regardless of whether there is sufficient margin posted when the trade is ordered.

b. Under no circumstances shall TD Ameritrade Futures & Forex or any other FCM with whom the Firm has an omnibus or other clearing relationship have any responsibility or liability to Client in the event that, whether because of electronic or other mechanical failure, system failure or delay, acts of God or terrorism, or any other reason, (a) Client is unable to access or use the website or trading software, whether to place an order, receive Account related information, or otherwise engage in any futures related activities, or (b) any exchange or clearing corporation sustains any mechanical, electrical or other failure, delay, interruption, or congestion, whether or not such results in a failure to maintain an orderly market, failure or delay in the execution, clearance, or confirmation of futures transactions for the Account or otherwise. To reduce costs and increase the efficiency in confirming Client's trades and reporting Account data to Client, Client consents to delivery of all his daily statements and margin calls (collectively, "statements") by email, instead of hard copy, to the email address provided by Client. Client acknowledges that some electronic markets permit continuous trading and that access to those markets may not be provided by TD Ameritrade Futures & Forex. Under no circumstances shall TD Ameritrade Futures & Forex bear any liability to Client for any losses that may result from the inability to access markets due to such restrictions. Client shall bear sole responsibility for the cancellation of all unexecuted day orders that can be executed during market hours for which access is not provided by TD Ameritrade Futures & Forex. If TD Ameritrade Futures & Forex believes that execution or attempted execution of any Client order might contravene any Applicable Law or violates the Firm's internal policies, TD Ameritrade Futures & Forex, in its sole discretion, may delay or refuse to execute any order to purchase or sell Commodity Interests for the Account, at any time, and from time to time.

TDA 600 F 03/18

## 11. EXERCISES, ASSIGNMENTS, AND DELIVERIES

With regard to options transactions, Client understands that some exchange clearing houses have established exercise requirements for the tender of exercise instructions and that options will become worthless if Client does not deliver instructions by such expiration times. At least two business days prior to the last trading day in the case of long and short positions in options, Client will give TD Ameritrade Futures & Forex instructions to liquidate, exercise, or allow the expiration of such options, and will deliver to the Firm sufficient funds required in connection with exercise. If such instructions or such funds are not received by TD Ameritrade Futures & Forex prior to the expiration of the option, TD Ameritrade Futures & Forex may permit an option to expire. Client also understands that certain exchanges and clearing houses automatically exercise some "in-the-money" options unless instructed otherwise. Client acknowledges full responsibility for taking action either to exercise or to prevent exercise of an option contract, as the case may be. TD Ameritrade Futures & Forex is not required to take any action with respect to an option, including without limitation any action to exercise a valuable option contract prior to its expiration or to prevent the automatic exercise of an option, except upon Client's express instructions. Client further understands that the Firm may also establish exercise cut-off times, which may be different from the times established by the contract markets or clearing houses. If timely exercise and assignment instructions are not given, Client hereby agrees to waive any and all claims for damage or loss Client might have against TD Ameritrade Futures & Forex arising out of the fact that an option was or was not exercised. Client understands that TD Ameritrade Futures & Forex, or its agents, randomly assign exercise notices to Clients, that all short option positions are subject to assignment at any time, including positions established on the same day that exercises are assigned, and that exercise assignment notices are allocated randomly from among all Clients' short option positions which are subject to exercise. With regard to futures transactions, liquidating instructions on open positions in a current delivery month must be given to TD Ameritrade Futures & Forex at least five business days prior to the first notice day in the case of long positions, and at least five business days prior to the last trading day in the case of short positions. TD Ameritrade Futures & Forex does not allow for futures contracts to be settled with physical delivery of a commodity nor does TD Ameritrade Futures & Forex allow for positions to be held on or after First Notice Day. Client is required to close or roll Client's positions to the next active month prior to First Notice Day. While any positions can be liquidated at the discretion of the TD Ameritrade Futures & Forex Risk Department at any time and without prior notice, open positions (regardless of whether they are long or short) in physically delivered products will be liquidated before First Notice Day or Last Trade Date, whichever occurs first. If funds, documents, or instructions are not received, TD Ameritrade Futures & Forex may, without notice, close out such positions without additional prior notification. TD Ameritrade Futures & Forex shall have no liability to Client for any such action. In the event of an error, omission, or out trade discovered on or after the last day of trading, TD Ameritrade Futures & Forex will abide by the appropriate Exchange rules for an Alternative Delivery Procedure (ADP).

## 12. POSITION LIMITS

In addition to compliance with any position limits that TD Ameritrade Futures & Forex may impose hereunder, Client agrees to comply with any applicable position limits that may be established by the CFTC, other applicable regulators or the rules of any exchange or self regulatory organization, whether Client is acting alone or in concert with others.

## 13. FOREIGN CURRENCY CONVERSIONS

Client will make all deposits in U.S. dollars except as otherwise permitted by TD Ameritrade Futures & Forex. Unless another currency is designated in the confirmation for such transaction, all margin deposits for such contract and any debit or credit made in the Account as a result of liquidating such a contract shall be in U.S. dollars at a rate of exchange determined by the Firm in its sole discretion on the basis of the then prevailing rates of exchange for such foreign currency. If Client places any order that would be settled in a currency other than U.S. dollars or otherwise instructs the Firm to enter into any transaction to be denominated in a currency other than U.S. dollars, then: (a) Client shall be deemed to have authorized the Firm to convert funds to the applicable currency sufficient to meet the applicable margin requirement; (b) the exchange rate for such conversion shall be determined by the Firm on the basis of then-prevailing rates of exchange and the Firm may retain a fee for such conversion; and (c) any profit or loss arising as a result of a fluctuation in the exchange rate affecting such currency shall be for the Account and at the Client's risk. In no event shall TD Ameritrade Futures & Forex be required to effect, or be responsible for, the conversion of funds in anticipation of changes in prevailing rates of exchange. Where applicable, Client shall be deemed to have authorized the holding of funds outside of the U.S., a money center country (as defined in CFTC Rule 1.49), or in a country other than the currency's country of origin if Client fails to object when informed (by receipt of confirmation or otherwise) that funds are held in such jurisdiction.

## 14. INDIVIDUAL ACCOUNT

a. If this is an Individual Account, or Individual Retirement Account ("IRA"), Client represents that this is an Individual or Sole Proprietorship Account and no one else has an interest in the Account.

b. If this is an IRA established under Section 408(a) of the Internal Revenue Code of 1986, as amended ("Code"), or an account of a Roth IRA established under Section 408A of the Code (each, an "IRA"), the undersigned person represents that he or she is the beneficial owner of the IRA, which is the Client hereunder, and has authority: (1) to give any instructions with respect to the account; (2) to receive any demands, notices, confirmations, reports, statements, and other communications of any kind; (3) to sign any other documents related to the opening or maintenance of this account; and (4) generally to deal with TD Ameritrade Futures & Forex in connection herewith as fully and completely as if the trustee or custodian of the IRA had no interest herein.

## 15. JOINT ACCOUNT

If this is a Joint Account, each Client agrees that liability shall be joint and several. Each Client shall have authority: (1) to give any instructions with respect to the Account; (2) to receive any demands, notices, confirmations, reports, statements, and other communications of any kind; (3) to sign any other documents related to the opening or maintenance of the Account; and (4) generally to deal with TD Ameritrade Futures & Forex in connection herewith as fully and completely as if the other joint tenant or tenants had no interest herein. Notwithstanding the foregoing, TD Ameritrade Futures & Forex is authorized to require joint action by the joint tenants on an Account. TD Ameritrade Futures & Forex shall be under no duty or obligation to inquire into the purpose or propriety of any instruction given and shall be under no obligation to see to the application of any funds so delivered.

## 16. NOTIFICATION OF RECORDING

TD Ameritrade Futures & Forex is hereby granted permission to record telephone conversations between its representatives and Client.

TDA 600 F 03/18

## 17. BINDING EFFECT; AMENDMENTS

This is the entire agreement of the parties governing the Account, and supersedes all prior or contemporaneous agreements between Client and TD Ameritrade Futures & Forex concerning the Account. TD Ameritrade Futures & Forex reserves the right to amend this Agreement without prior notice to Client, or as required by Applicable Law. The current version of the Agreement will be posted electronically and Client's continued account activity after such amendment constitutes the Client's agreement to be bound by all amendments to the Agreement, regardless of whether the Client reviews them. No person has the authority to represent that this Agreement will not be enforced in accordance with its terms or to make any representation inconsistent with the terms of the Risk Disclosure for Futures and Options and the Risk Disclosure Statement concurrently delivered to Client. TD Ameritrade Futures & Forex's failure to insist on Client's strict adherence to the terms hereof shall not act as a waiver of its rights to so insist at any time thereafter, all such rights being cumulative and unconditional in nature.

## 18. CLIENT REPRESENTATIONS

Client represents and warrants that: (a) Client has the legal authority and is duly authorized and empowered to execute and deliver this Agreement and to open Accounts and effect transactions in Commodity Interests through TD Ameritrade Futures & Forex, such transactions do not and will not violate any Applicable Law, or any judgment, decree, order, or agreement, to which Client or the Client's property is subject, and this Agreement is binding on and enforceable against Client in accordance with its terms; (b) Client is under no legal disability which would prevent client from trading in Commodity Interests or entering into this Agreement and that all of the information contained in the Account Application is true, complete, and correct as of the date hereof; (c) Client is not an associated person, general partner, employee, or otherwise associated with another FCM or IB under CFTC Regulation 155.3(c); (d) If Client directs TD Ameritrade Futures & Forex to execute block trades, Client represents that it is an eligible contract participant as defined by the Commodity Exchange Act and the CFTC; (e) client will promptly notify TD Ameritrade Futures & Forex in writing of any changes in such information or any change in circumstances which would affect the representations and information given to the Firm or which would in any way affect Client's ability to make any transactions contemplated by or render performance under any term of this Agreement; (f) if Client is an individual, he or she is of majority age, and that he or she is not an employee or a member of any exchange (nor of any corporation of which any exchange owns a majority of the capital stock) nor of a firm registered on any exchange, or if he or she is so employed that a written consent of his or her employer is attached herewith; and (g) Client will notify TD Ameritrade Futures & Forex in writing to liquidate all open Commodity Interest positions in and close his Account if losses therein approach the extent at which the lifestyle of Client or any dependent of Client may become adversely affected.

## 19. CONSENT TO CREDIT CHECK; ANTI-MONEY LAUNDERING PROVISIONS

Client understands an investigation may be made pertaining to his credit standing and his business accounts, and authorizes TD Ameritrade Futures & Forex to contact such banks, financial institutions, and credit agencies as the Firm shall deem appropriate. Client acknowledges that any Account established pursuant to this Agreement shall be subject to anti-money laundering requirements established by applicable government agencies or self-regulating organizations. Accordingly, Client shall promptly provide any documents or certifications requested by TD Ameritrade Futures & Forex that the Firm believes are necessary or advisable to obtain for anti-money laundering compliance purposes.

## 20. ASSIGNABILITY

Client's rights and duties hereunder may not be assigned other than with the written consent of TD Ameritrade Futures & Forex. Client agrees that TD Ameritrade Futures & Forex may assign this Agreement to another FCM upon notice to Client and otherwise in accordance with Applicable Law.

## 21. INTERPRETATION

These section headings are for convenience of reference only and shall not affect the meaning or construction of any provision of this Agreement. If any provision of this Agreement shall be determined to be invalid or unenforceable, the remainder shall not be affected thereby.

## 22. GOVERNING LAW

This Agreement and its enforcement shall be governed by the laws of the State of Nebraska without regard to the conflicts of law provision thereof. No lawsuit, arbitration proceeding, or other claim, regardless of form, arising out of transactions under this Agreement may be brought by Client more than one year after the cause of action arose. Provided, however, that any action brought under the provisions of Section 14 of the Act, may be brought at any time within two years after the cause of action accrues.

## 23. ACKNOWLEDGMENT OF DISCLOSURES

CLIENT HEREBY UNDERSTANDS THE FUTURES CLIENT AGREEMENT AND CONSENTS AND AGREES TO ALL OF THE TERMS AND CONDITIONS OF AGREEMENT SET FORTH ABOVE. CLIENT ACKNOWLEDGES THAT TRADING IN COMMODITY INTERESTS IS SPECULATIVE, INVOLVES A HIGH DEGREE OF RISK, AND IS APPROPRIATE ONLY FOR PERSONS WHO CAN ASSUME RISK OF LOSS IN EXCESS OF THEIR MARGIN DEPOSIT. CLIENT EXPRESSLY ACKNOWLEDGES THAT IT HAS RECEIVED, READ, AND UNDERSTANDS, AND HAS RETAINED COPIES OF CFTC RULE 1.55 RISK DISCLOSURE STATEMENT FOR FUTURES AND OPTIONS. CLIENT ALSO UNDERSTANDS THAT TD AMERITRADE FUTURES & FOREX IS RELYING ON CLIENT TO BE FAMILIAR WITH ANY DISCLOSURES RELATED TO THIS ACCOUNT THAT ARE OR MAY BECOME APPLICABLE.

Investment Products: Not FDIC Insured * No Bank Guarantee * May Lose Value

TD Ameritrade Futures & Forex LLC, member NFA. Securities brokerage services provided by TD Ameritrade, Inc., and TD Ameritrade Clearing, Inc., members FINRA/SIPC. TD Ameritrade is a trademark jointly owned by TD Ameritrade IP Company, Inc. and The Toronto-Dominion Bank.
© 2018 TD Ameritrade.

TDA 600 F 03/18

**EXHIBIT B**



**EXHIBIT C**



# TD Ameritrade Futures & Forex LLC
# FCM-Specific Disclosure Document

600 W. Chicago Ave. Suite 100 ▪ Chicago, IL 60654-2597

Phone: 866-839-1100 ▪ Fax: 773-435-3232

## TABLE OF CONTENTS

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Firm and Its Principals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Firm's Business. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
FCM Customer Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Permitted Depositories and Counterparties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Material Risks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Material Complaints or Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Customer Fund Segregation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Filing a Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Relevant Financial Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Risk Management Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Leverage Ratio. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TDA 614 F 01/20



# TD Ameritrade Futures & Forex LLC
# FCM-Specific Disclosure Document

600 W. Chicago Ave. Suite 100 ▪ Chicago, IL 60654-2597

Phone: 866-839-1100 ▪ Fax: 773-435-3232

## INTRODUCTION

The Commodity Futures Trading Commission ("Commission") requires each futures commission merchant ("FCM"), including TD Ameritrade Futures & Forex LLC ("TD Ameritrade Futures & Forex"), to provide the following information to a customer prior to the time the customer first enters into an account agreement with the FCM or deposits money or securities (funds) with the FCM. Except as otherwise noted below, the information set out is as of January 1, 2020. TD Ameritrade Futures & Forex will update this information annually and as necessary to take account of any material change to its business operations, financial condition or other factors that TD Ameritrade Futures & Forex believes may be material to a customer's decision to do business with TD Ameritrade Futures & Forex. Nonetheless, TD Ameritrade Futures & Forex's business activities and financial data are not static and will change in non-material ways frequently throughout any 12-month period.

[NOTE: TD Ameritrade Futures & Forex LLC is a subsidiary of TD Ameritrade Holding Corporation. Information that may be material with respect to TD Ameritrade Futures & Forex LLC for purposes of the Commission's disclosure requirements may not be material to TD Ameritrade Holding Corporation for purposes of applicable securities laws.]

## FIRM AND ITS PRINCIPALS

TD Ameritrade Futures & Forex LLC
600 West Chicago Ave.
Suite 100
Chicago, IL 60654
866-839-1100 phone
773-435-3232 fax
futuressupport@tdameritrade.com

TD Ameritrade Futures & Forex's Designated Self-Regulatory Organization (DSRO) is the National Futures Association (NFA) www.nfa.futures.org.

The following is a list of TD Ameritrade Futures & Forex's Principals along with their title, business address, business background, areas of responsibility, and the nature of the duties of each principal as defined in § 3.1(a):

**James Mackenzie, President, TD Ameritrade Futures & Forex**
**Business Address:** 600 W. Chicago Ave, Suite 100, Chicago, IL 60654

**Background:** James Mackenzie has worked in the financial industry for more than 16 years. Prior to coming to TD Ameritrade, he worked at MF Global, Penson Futures, and Goldenberg Hehmeyer where his main focus was with technology and trading. James holds a Series 3 and 34, has a Bachelor of Arts in Biology and Psychology from Middlebury College, and an MBA from the University of Notre Dame.

**Areas of Responsibility:** Futures & Forex Operations
**Duties:** James Mackenzie is responsible for the Futures and Forex business at TD Ameritrade Futures & Forex.

**William Yates, Chief Financial Officer and Treasurer, TD Ameritrade Futures & Forex**
**Business Address:** 200 South 108th Avenue, Omaha, NE 68154

**Background:** William Yates is responsible for the development and implementation of treasury strategies, managing treasury operations, liquidity, and cash management. William has been with TD Ameritrade since 1996, serving in a number of roles within the company's finance, operations, and compliance functions during his tenure. Prior to joining TD Ameritrade, William spent nine years with the public accounting firm Arthur Andersen LLP. William has served in various capacities in the securities industry, including most recently as a member of the Midwest District Committee of the Financial Industry Regulatory Authority (FINRA). He also serves on the boards and various board committees of the Options Clearing Corporation and CHI Health. He holds Series 7, 24, 27, and 53 licenses, and is a member of the Nebraska State Society of Certified Public Accountants and the American Institute of Certified Public Accountants.

**Areas of Responsibility:** Treasury
**Duties:** William Yates oversees treasury functions for TD Ameritrade Futures & Forex.

**Gregg Fuesel, Director, Regulatory Reporting**
**Business Address:** 200 South 108th Avenue, Omaha, NE 68154

**Background:** Gregg Fuesel is Director of Regulatory Reporting at TD Ameritrade. He started at TD Ameritrade in March of 2011. He has worked at multiple broker-dealers along with ten years at the Options Clearing Corporation. Regulatory Reporting is responsible for filing multiple regulatory reports and adhering to regulations of the SEC, FINRA, CFTC, and the NFA along with coordinating the monthly Regulatory Reporting Committee which is responsible for overseeing the regulatory reporting requirements of certain subsidiaries of the Company. He is also a member of the SIFMA Capital Committee. He holds Series 3, 4, 7, 27, 34, and 63 licenses.

**Areas of Responsibility:** Regulatory Reporting
**Duties:** Gregg Fuesel oversees the 1-FR-FCM Report, Segregation Computation, and Regulatory Reporting for TD Ameritrade Futures & Forex.

**Joe Iraci, Managing Director, Financial Risk Management**
**Business Address:** 1 Plaza Four A, Jersey City, NJ 07311

**Background:** Joe Iraci is a Managing Director at TD Ameritrade where he heads the Financial Risk Management team. Prior to this position, he headed the Financial Markets Services Group, and the Corporate Risk team. Prior to joining TD Ameritrade, Joe held several senior risk management positions within Fidelity Investments at both Fidelity Employer Services Corporation and Fidelity Brokerage Company. Joe previously had been the Head of New Business Operations, UBS AG, and the Regional Head Americas/Deputy Global Head of Operational Risk at Deutsche Bank AG, a position he assumed from heading the Business Risk Management for Deutsche Bank's Corporate Trust and Agency Services business. Prior to joining Deutsche Bank, Joe had been a Bank Examiner with the FDIC and served in the United States Marine Corps. Joe completed his undergraduate studies at St. John's University and received his MBA from New York University.

**Areas of Responsibility:** Risk Management
**Duties:** Joe Iraci oversees risk management functions for TD Ameritrade Futures & Forex.


**Spyro Karetsos, Chief Risk Officer**
**Business Address:** 1 Plaza Four A, Jersey City, NJ 07311

**Background:** In partnership with business units across TD Ameritrade, Spyro Karetsos helps identify and manage the organization's credit, market and operational risks. He is also a member of the Company's senior operating committee (SOC), which helps shape the strategic focus of the organization.

Karetsos joined TD Ameritrade in 2019, bringing more than 20 years of financial services experience to the Company. He most recently served as head of non-financial risk and Enterprise Risk Services for SunTrust Bank with responsibility for Strategic Risk, Operational Risk, and Third-Party Risk. His work as architect of SunTrust's advanced risk appetite framework earned it **Risk.net's** 2018 Bank of the Year award.

Prior to SunTrust, Karetsos held leadership positions with Vanguard, Goldman Sachs, and spent 10 years in the Federal Reserve System where he worked at the Federal Reserve Bank of New York and became an assistant vice president of the Federal Reserve Bank of Philadelphia.

A Risk Management Association board member since 2013, Karetsos earned a Bachelor of Arts in policy studies from Dickinson College and a Master of Business Administration from Pace University. He also holds a certificate from the Graduate School of Banking at the University of Wisconsin.

**Areas of Responsibility:** Risk Management
**Duties:** Spyro Karetsos oversees all risk management functions for TD Ameritrade Futures & Forex.


**Ben Miller, Director, TD Ameritrade Futures & Forex**
**Business Address:** 3000 TD Ameritrade Lane, Southlake, TX 76092

**Background:** Ben Miller has more than 18 years of financial industry experience. Prior to coming to TD Ameritrade, he worked for Penson Futures for more than 10 years and he has experience with Coquest (a registered IB) and ED&F Man where his main focus was with operations. Ben holds a Series 3, 30, and 34 and has a Bachelor of Business Administration from the University of Oklahoma.

**Areas of Responsibility:** Futures & Forex Operations
**Duties:** Ben Miller oversees futures and forex operations for TD Ameritrade Futures & Forex.


**Steven Quirk, Chief Executive Officer, TD Ameritrade Futures & Forex**
**Business Address:** 600 West Chicago Avenue, Suite 100, Chicago, IL 60654

**Background:** Steven Quirk oversees the strategy and deployment of initiatives for the Active Trader segment at TD Ameritrade. He also serves as a member of the Company's senior operating committee (SOC), which shapes the strategic focus of the organization. Prior to his current role, Steven was responsible for the development of new trading tools and technology enhancements for the thinkorswim by TD Ameritrade trading platform. Steven's 28-year trading career began in 1987 as a Chicago Board Options Exchange (CBOE) market maker. While at the CBOE, he served on the exchange's Index Market Performance Committee and the Arbitration Committee. Steven was a partner with SCMS for seven years, trading options on index products. He also led the Chicago operations of Van der Moolen USA. Steven graduated from the University of Wisconsin with a B.B.A. in Risk/Insurance and Marketing. He holds Series 3, 4, 7, 24, 34, and 63 licenses.

**Areas of Responsibility:** Registered Principal; Trading
**Duties:** Steven Quirk oversees the strategy and deployment of initiatives for the Active Trader segment at TD Ameritrade.


**Susan Boudrot, Managing Director, Global Chief Compliance Officer, TD Ameritrade Holding Corporation**
**Business Address:** 1 Plaza Four A, Jersey City, NJ 07311

**Background:** Susan Boudrot has worked in the financial industry for over 28 years. She currently is a Managing Director and the Global Chief Compliance Officer. She oversees Compliance for the TD Ameritrade Holding Corporation. She is also on the board of directors for TD Ameritrade Futures & Forex. She previously worked at Fidelity where she was responsible for the compliance teams which supported the retail brokerage firm, the defined contribution/benefit organization, the trust company, the insurance agency, the custodial platform for third party investment advisors, and the privacy program. Prior to that, she worked at Charles Schwab where her team supported brokerage operations, advertising, retail sales, research, and the international affiliates of the firm. She was the CCO and General Counsel at Brown & Company, a discount broker-dealer. She also was an Enforcement Attorney with the SEC and an associate in private corporate practice. She has a JD and an MBA from Boston University and a BA from Regis College. She holds the Series 3, 4, 7, 8, 14, 24, and 63 licenses.

**Areas of Responsibility:** Compliance
**Duties:** Susan Boudrot oversees the compliance functions of TD Ameritrade.

TDA 614 F 01/20

**Scott Seiffert, Chief Financial Officer, TD Ameritrade Futures & Forex**
**Business Address:** 200 South 108th Avenue, Omaha, NE 68154

**Background:** Scott Seiffert has more than 20 years of financial services industry experience and is Chief Financial Officer at TD Ameritrade. He has been with TD Ameritrade since July 2016 and prior to joining, held several senior finance positions with Wells Fargo Advisors. Scott previously worked in internal audit at Edward Jones and spent almost 12 years in public accounting. Scott earned a bachelor's degree in Business Administration from the University of Missouri–St. Louis. He holds a Series 27 license.

**Areas of Responsibility:** Accounting and Finance
**Duties:** Scott Seiffert oversees the accounting and financial functions for TD Ameritrade Futures & Forex.

**John Burns, Chief Compliance Officer, TD Ameritrade Futures & Forex**
**Business Address:** 600 W. Chicago Ave, Suite 100, Chicago, IL 60654

**Background:** John Burns joined TD Ameritrade in 2018 with 14+ years of futures industry experience.  He was previously the Chief Compliance Officer and a Principal of Huatai Financial USA Inc., the Chicago, IL based FCM affiliate of Chinese brokerage firm Huatai Securities Co. Ltd.  He began his career as a clerk in the agriculture pits on the floor of the Chicago Board of Trade.  In 2007 Mr. Burns transitioned into the compliance department of R.J. O'Brien & Associates, LLC, the oldest and largest independent futures brokerage and clearing firm in the United States, where some of his responsibilities included oversight of the IB network, account on-boarding, trade surveillance, CTA/CPO due diligence, and position reporting.  Mr. Burns has a B.S. in Political Science from Northern Illinois University, M.S. in Finance from Lewis University, Six Sigma Green Belt, and a Series 3 license.

**Areas of Responsibility:** Compliance
**Duties:** John Burns oversees the compliance functions for TD Ameritrade Futures & Forex.

## FIRM'S BUSINESS

TD Ameritrade Futures & Forex's business activity caters to self-directed retail futures and forex customers. Our customer base is more than 90% individual or joint accounts. TD Ameritrade Futures & Forex clients do not have direct market or API access to the futures markets. TD Ameritrade Futures & Forex currently offers the ability to execute orders on the CME Group (CME, CBOT, NYMEX & COMEX) ICE US, and CFE. Current product groups offered to our customers to trade include: interest rates; metals; currency; grains; stock index; energy, softs; forest; and livestock futures contracts. TD Ameritrade Futures & Forex offers approximately 75 different non-commission forex pairs. This business activity is supported by one hundred percent (100% ) of the firm's assets and capital.

## FCM CUSTOMER BUSINESS

On November 25th, 2019, The Charles Schwab Corporation and The TD Ameritrade Holding Corporation announced that they have entered into a definitive agreement for Schwab to acquire TD Ameritrade in a stock transaction valued at approximately $26 billion.  The proposed acquisition has not materially impacted TD Ameritrade Futures & Forex LLC or its clients.  For additional details please visit https://www.amtd.com/news-and-stories/press-releases/press-release-details/2019/acquisition-information-center/default.aspx. TD Ameritrade Futures & Forex is owned by TD Ameritrade Online Holding Corporation, which is a wholly owned subsidiary of TD Ameritrade Holding Corporation (along with its subsidiaries "AMTD"), a publicly held company with a market capitalization of over $27 billion and liquid assets in excess of $200 million. AMTD, through its broker-dealer and FCM subsidiary, serves an investor base comprised of over 11.0 million funded customer accounts with over $1.1 trillion in customer assets.

TD Ameritrade Futures & Forex caters to self-directed retail futures and forex customers. Our customer base is more than 90% individual or joint accounts. TD Ameritrade Futures & Forex clients do not have direct market or API access to the futures markets. TD Ameritrade Futures & Forex currently offers the ability to execute orders on the CME Group (CME, CBOT, NYMEX, & COMEX), ICE US, and CFE. Current product groups offered to our customers to trade include: interest rates, metals, currency, grains, stock index, energy, softs, forest, and livestock futures contracts. TD Ameritrade Futures & Forex offers approximately 75 different non-commission forex pairs.

TD Ameritrade Futures & Forex does not own any futures exchange clearing memberships or self-clear any futures or futures options products. TD Ameritrade Futures & Forex utilizes two clearing firms, ADM Investor Services, Inc., and ABN AMRO Clearing Chicago LLC, to clear its futures business. TD Ameritrade Futures & Forex is not involved directly or indirectly in taking proprietary trading positions in listed derivatives or engaging in arbitrage activities of any kind. In addition, TD Ameritrade Futures & Forex is not involved in clearing swaps or engaged in over-the-counter derivatives trading. TD Ameritrade Holding's international business is currently limited to its offering of TD Ameritrade Singapore Pte. Ltd. and TD Ameritrade Hong Kong Ltd.

## PERMITTED DEPOSITORIES AND COUNTERPARTIES

TD Ameritrade Futures & Forex will invest futures customer funds in cash and/or U.S. Government securities. The customer segregated funds will remain in cash and/or U.S. Government securities held at US Bank, ABN AMRO, and ADM Investor Services, Inc. The omnibus accounts titled "TD Ameritrade Futures & Forex LLC Regulation 1.20 Customer Segregated Account" will be a combination of cash and U.S. Government securities pursuant to § 1.25.

TD Ameritrade Futures & Forex maintains and adheres to a separate Depository Selection Policy. TD Ameritrade Futures & Forex performs regular reviews of their bank depositories, counterparties, and vendors to insure that they can support the futures and forex business. The reviews include, but are not limited to:

- A yearly review of the operational capabilities, ideally via a SOC1 or external audit.

- A quarterly financial review by the Treasury department which includes, but is not limited to, a review of the credit ratings from Moody's and S&P.

- A quarterly operational review focused on any issues or concerns raised during the prior quarter.

- A quarterly review of any regulatory actions or fines as well as any major changes in personnel supporting TD Ameritrade Futures & Forex's business with the depository, counterparty, or vendor.

The results of each of these reviews are shared during the quarterly TD Ameritrade Futures & Forex Risk Committee meeting. An appropriate action plan, if needed, will be put in place. It is important to note that additional reviews may take place outside of the listed formal reviews. Depending on the depth of the review, it may or may not be reported to the Risk Committee.

TDA 614 F 01/20

## MATERIAL RISKS

While TD Ameritrade Futures & Forex does not believe any of the following risks to be material, TD Ameritrade Futures & Forex recognizes that customers may be subject to liquidity, credit, and/or counterparty risks by entrusting funds with TD Ameritrade Futures & Forex. TD Ameritrade Futures & Forex attempts to limit these risks by maintaining excess capital and investments in cash or highly liquid, readily accessible products.

In order to assure that it is in compliance with its regulatory capital requirements and that it has sufficient liquidity to meet its ongoing business obligations, TD Ameritrade Futures & Forex holds a significant portion of its nonsegregated liquid assets in cash, highly liquid money market mutual funds, and/or U.S. Treasury securities guaranteed as to principal and interest. As of the date of this disclosure, all nonsegregated liquid funds are held in either 1) cash in a bank account or 2) highly liquid money market mutual funds, both of which are in the name of TD Ameritrade Futures & Forex. Therefore, all nonsegregated liquid assets are available on demand.

TD Ameritrade Futures & Forex carries no debt on the balance sheet and is therefore not financially leveraged. TD Ameritrade Futures & Forex currently has approximately US$131 million of net capital as of July 1, 2019. TD Ameritrade Futures & Forex holds 100% of investments in overnight cash or cash equivalents, and therefore has adequate available liquidity at all times. Principal liabilities are payables to clients, accounts payable, and deferred income taxes.

TD Ameritrade Futures & Forex holds customer funds in cash and U.S. Treasury securities within properly established §1.20 accounts in the name of TD Ameritrade Futures & Forex LLC and in compliance with §1.25. Customer funds are not invested in any affiliated entity. The weighted average maturity of customer funds invested in U.S. Treasuries is .01 years and the weighted average yield is 0.97 percent.

TD Ameritrade Futures & Forex parent corporation, TD Ameritrade Holding Corp., is rated A and A2 by S&P and Moody's, respectively.

TD Ameritrade Futures & Forex has no material commitments.

## MATERIAL COMPLAINTS OR ACTIONS

On April 10, 2018, Diego Krukever, Karem Sandgarten and Amir Rahimi, filed a putative class action lawsuit against TD Ameritrade Futures & Forex and TD Ameritrade, Inc. (collectively, TD Ameritrade) in the United States District Court for the Southern District of Florida. Plaintiffs, clients of TD Ameritrade, allege that TD Ameritrade Futures & Forex, wrongfully liquidated plaintiffs' short put options on E-Mini S&P 500 futures contracts between the stock market closing on February 5, 2018, and the stock market opening on February 6, 2018, during which time they allege the options futures markets were illiquid. Plaintiffs claimed that the conduct of TD Ameritrade Futures & Forex operated as a fraud or deceit in violation of section 6b(e)(3) of the Commodity Exchange Act and section 180.1(a)(3) of the CFTC regulations, and breached an implied covenant of good faith and fair dealing by failing to liquidate positions in a commercially reasonable way. Plaintiffs claimed that TD Ameritrade, Inc. aided and abetted the alleged violations by TD Ameritrade Futures & Forex. Plaintiffs alleged that defendants caused plaintiffs and class members to incur tens of millions of dollars of losses. On July 23, 2018, TD Ameritrade filed a motion to dismiss plaintiffs' second amended complaint, which plaintiffs have opposed. On October 5, 2018, the Court dismissed with prejudice the claims that the conduct of TD Ameritrade Futures & Forex operated as a fraud or deceit in violation of the above-referenced sections of the Commodity Exchange Act and the CFTC regulations and the aiding and abetting claim against TD Ameritrade, Inc. The Court denied the motion to dismiss the claim of breach of an implied covenant of good faith and fair dealing. On December 17, 2018, the Court denied Plaintiffs' motion for class certification. Discovery has begun. Another lawsuit containing substantial similar allegations against TD Ameritrade Futures & Forex has been filed in the United States District Court for the Eastern District of California, and other clients have filed similar claims in arbitrations. TD Ameritrade intends to vigorously defend against the lawsuits and the arbitrations and is unable to predict the outcome or the timing of the ultimate resolution of this litigation, or the potential losses, if any, that may result.

*Other Legal and Regulatory Matters* – TD Ameritrade Futures & Forex may be subject to a number of other lawsuits, arbitrations, claims, and other legal proceedings in connection with its business. Some of these legal actions include claims for substantial or unspecified compensatory and/or punitive damages. In addition, in the normal course of business, TD Ameritrade Futures & Forex discusses matters with its regulators raised during regulatory examinations or otherwise subject to their inquiry. These matters could result in censures, fines, penalties, or other sanctions. In light of the uncertainties involved in such matters, TD Ameritrade Futures & Forex is unable to predict the outcome or the timing of the ultimate resolution of these matters, or the potential losses, fines, penalties, or equitable relief, if any, that may result, and it is possible that the ultimate resolution of one or more of these matters may be material to TD Ameritrade Futures & Forex's results of operations for a particular reporting period.

## CUSTOMER FUNDS SEGREGATION

**Customer Accounts.** FCMs may maintain up to three different types of accounts for customers, depending on the products a customer trades:

(i)   a *Customer Segregated Account* for customers that trade futures and options on futures listed on U.S. futures exchanges;

(ii)  a *30.7 Account* for customers that trade futures and options on futures listed on foreign boards of trade (At this time, TD Ameritrade Futures & Forex customers do not engage in activity that requires a 30.7 account.); and

(iii) a *Cleared Swaps Customer Account* for customers trading swaps that are cleared on a DCO registered with the Commission (At this time, TD Ameritrade Futures & Forex customers do not engage in activity that requires a cleared swaps customer account.).

The requirement to maintain these separate accounts reflects the different risks posed by the different products. Cash, securities, and other collateral (collectively, Customer Funds) required to be held in one type of account, for example, the Customer Segregated Account, may not be commingled with funds required to be held in another type of account, for example, the 30.7 Account, except as the Commission may permit by order. For example, the Commission has issued orders authorizing ICE Clear Europe Limited, which is registered with the Commission as a DCO, and its FCM clearing members: (i) to hold in Cleared Swaps Customer Accounts Customer Funds used to margin both (a) Cleared Swaps and (b) foreign futures and foreign options traded on ICE Futures Europe, and to provide for portfolio margining of such Cleared Swaps and foreign futures and foreign options; and (ii) to hold in Customer Segregated Accounts Customer Funds used to margin both (c) futures and options on futures traded on ICE Futures U.S. and (d) foreign futures and foreign options traded on ICE Futures Europe, and to provide for portfolio margining of such transactions.

**Customer Segregated Account.** Funds that customers deposit with an FCM, or that are otherwise required to be held for the benefit of customers, to margin futures and options on futures contracts traded on futures exchanges located in the U.S., for example, designated contract markets, are held in a **Customer Segregated Account** in accordance with section 4d(a)(2) of the Commodity Exchange Act and Commission Rule 1.20. **Customer Segregated Funds** held in the Customer Segregated Account may not be used to meet the obligations of the FCM or any other person, including another customer.

All Customer Segregated Funds may be commingled in a single account, such as a customer omnibus account, and held with: (i) a bank or trust company located in the U.S.; (ii) a bank or trust company located outside of the U.S. that has in excess of US$1 billion of regulatory capital; (iii) an FCM; or (iv) a DCO.

Such commingled account must be properly titled to make clear that the funds belong to, and are being held for the benefit of, the FCM's customers. Unless a customer provides instructions to the contrary, an FCM may hold Customer Segregated Funds only: (i) in the U.S.; (ii) in a money center country; or (iii) in the country of origin of the currency.

An FCM must hold sufficient U.S. dollars in the U.S. to meet all U.S. dollar obligations and sufficient funds in each other currency to meet obligations in such currency. Notwithstanding the foregoing, assets denominated in a currency may be held to meet obligations denominated in another currency (other than the U.S. dollar) as follows: (i) U.S. dollars may be held in the U.S. or in money center countries[1] to meet obligations denominated in any other currency; and (ii) funds in money center currencies[2] may be held in the U.S. or in money center countries to meet obligations denominated in currencies other than the U.S. dollar.

**30.7 Account.** Funds that **30.7 Customers** deposit with an FCM, or that are otherwise required to be held for the benefit of customers, to margin futures and options on futures contracts traded on foreign boards of trade, for example, **30.7 Customer Funds**, and sometimes referred to as the **foreign futures and foreign options secured amount**, are held in a **30.7 Account** in accordance with Commission Rule 30.7.

Funds required to be held in the 30.7 Account for or on behalf of 30.7 Customers may be commingled in an omnibus account and held with: (i) a bank or trust company located in the U.S.; (ii) a bank or trust company located outside the U.S. that has in excess of US$1 billion in regulatory capital; (iii) an FCM; (iv) a DCO; (v) the clearing organization of any foreign board of trade; (vi) a foreign broker; or (vii) such clearing organization's or foreign broker's designated depositories. Such commingled account must be properly titled to make clear that the funds belong to, and are being held for the benefit of, the FCM's 30.7 Customers. As explained below, Commission Rule 30.7 restricts the amount of such funds that may be held outside of the U.S.

Customers trading on foreign markets assume additional risks. Laws or regulations will vary depending on the foreign jurisdiction in which the transaction occurs, and funds held in a 30.7 Account outside of the U.S. may not receive the same level of protection as Customer Segregated Funds. If the foreign broker carrying 30.7 Customer positions fails, the broker will be liquidated in accordance with the laws of the jurisdiction in which it is organized, which laws may differ significantly from the U.S. Bankruptcy Code. Return of 30.7 Customer Funds to the U.S. will be delayed and likely will be subject to the costs of administration of the failed foreign broker in accordance with the law of the applicable jurisdiction, as well as possible other intervening foreign brokers, if multiple foreign brokers were used to process the U.S. customers' transactions on foreign markets.

If the foreign broker does not fail but the 30.7 Customers' U.S. FCM fails, the foreign broker may want to assure that appropriate authorization has been obtained before returning the 30.7 Customer Funds to the FCM's trustee, which may delay their return. If both the foreign broker and the U.S. FCM were to fail, potential differences between the trustee for the U.S. FCM and the administrator for the foreign broker, each with independent fiduciary obligations under applicable law, may result in significant delays and additional administrative expenses. Use of other intervening foreign brokers by the U.S. FCM to process the trades of 30.7 Customers on foreign markets may cause additional delays and administrative expenses.

To reduce the potential risk to 30.7 Customer Funds held outside of the U.S., Commission Rule 30.7 generally provides that an FCM may not deposit or hold 30.7 Customer Funds in permitted accounts outside of the U.S. except as necessary to meet margin requirements, including prefunding margin requirements, established by rule, regulation, or order of the relevant foreign boards of trade or foreign clearing organizations, or to meet margin calls issued by foreign brokers carrying the 30.7 Customers' positions. The rule further provides, however, that in order to avoid the daily transfer of funds from accounts in the U.S., an FCM may maintain in accounts located outside of the U.S. an additional amount of up to 20% of the total amount of funds necessary to meet margin and prefunding margin requirements to avoid daily transfers of funds.

**Cleared Swaps Customer Account.** Funds deposited with an FCM, or otherwise required to be held for the benefit of customers, to margin swaps cleared through a registered DCO, that is, **Cleared Swaps Customer Collateral**, are held in a **Cleared Swaps Customer Account** in accordance with the provisions of section 4d(f) of the Act and Part 22 of the Commission's rules. Cleared Swaps Customer Accounts are sometimes referred to as LSOC Accounts. LSOC is an acronym for "legally separated, operationally commingled." Funds required to be held in a Cleared Swaps Customer Account may be commingled in an omnibus account and held with: (i) a bank or trust company located in the U.S.; (ii) a bank or trust company located outside of the U.S. that has in excess of US$1 billion of regulatory capital; (iii) a DCO; or (iv) another FCM. Such commingled account must be properly titled to make clear that the funds belong to, and are being held for the benefit of, the FCM's Cleared Swaps Customers.

**Investment of Customer Funds.** Section 4d(a)(2) of the Act authorizes FCMs to invest Customer Segregated Funds in obligations of the United States, in general obligations of any State or of any political subdivision thereof, and in obligations fully guaranteed as to principal and interest by the United States. Section 4d(f) authorizes FCMs to invest Cleared Swaps Customer Collateral in similar instruments.

Commission Rule 1.25 authorizes FCMs to invest Customer Segregated Funds, Cleared Swaps Customer Collateral, and 30.7 Customer Funds in instruments of a similar nature. Commission rules further provide that the FCM may retain all gains earned and is responsible for investment losses incurred in connection with the investment of Customer Funds.

Permitted investments include:

    (i)    Obligations of the United States and obligations fully guaranteed as to principal and interest by the United States (U.S. government securities);

    (ii)    General obligations of any State or of any political subdivision thereof (municipal securities);

    (iii)    Obligations of any United States government corporation or enterprise sponsored by the United States government (U.S. agency obligations)[3];

    (iv)    Certificates of deposit issued by a bank (certificates of deposit) as defined in section 3(a)(6) of the Securities Exchange Act of 1934, or a domestic branch of a foreign bank that carries deposits insured by the Federal Deposit Insurance Corporation;

    (v)    Commercial paper fully guaranteed as to principal and interest by the United States under the Temporary Liquidity Guarantee Program as administered by the Federal Deposit Insurance Corporation (commercial paper);

    (vi)    Corporate notes or bonds fully guaranteed as to principal and interest by the United States under the Temporary Liquidity Guarantee Program as administered by the Federal Deposit Insurance Corporation (corporate notes or bonds); and

    (vii)    Interests in money market mutual funds.

The duration of the securities in which an FCM invests Customer Funds cannot exceed, on average, two years.

An FCM may also engage in repurchase and reverse repurchase transactions with nonaffiliated registered broker-dealers, provided such transactions are made on a delivery versus payment basis and involve only permitted investments. All funds or securities received in repurchase and reverse repurchase transactions with Customer Funds must be held in the appropriate Customer Account, that is, Customer Segregated Account, 30.7 Account, or Cleared

[1] Money center countries means Canada, France, Italy, Germany, Japan, and the United Kingdom.

[2] Money center currencies means the currency of any money center country and the Euro.

[3] Obligations issued by the Federal National Mortgage Association or the Federal Home Loan Mortgage Association are permitted only while these entities operate under the conservatorship or receivership of the Federal Housing Finance Authority with capital support from the United States.

Swaps Customer Account. Further, in accordance with the provisions of Commission Rule 1.25, all such funds or collateral must be received in the appropriate Customer Account on a delivery versus payment basis in immediately available funds[4].

**No SIPC Protection.** Although TD Ameritrade, Inc. is a registered broker-dealer, it is important to understand that the funds you deposit with TD Ameritrade Futures & Forex LLC for trading futures and options on futures contracts on either U.S. or foreign markets or cleared swaps are not protected by the Securities Investor Protection Corporation.

Further, Commission rules require TD Ameritrade Futures & Forex to hold funds deposited to margin futures and options on futures contracts traded on U.S. designated contract markets in Customer Segregated Accounts. Similarly, TD Ameritrade Futures & Forex must hold funds deposited to margin cleared swaps and futures and options on futures contracts traded on foreign boards of trade in a Cleared Swaps Customer Account or a 30.7 Account, respectively. In computing its Customer Funds requirements under relevant Commission rules, TD Ameritrade Futures & Forex may only consider those Customer Funds actually held in the applicable Customer Accounts and may not apply free funds in an account under identical ownership but of a different classifcaition or account type (for example, securities, Customer Segregated, 30.7) to an account's margin deficiency. In order to be used for margin purposes, the funds must actually transfer to the identically owned undermargined account.

For additional information on the protection of customer funds, please see the Futures Industry Association's "Protection of Customer Funds Frequently Asked Questions" located at www.futuresindustry.org/downloads/PCF_questions.pdf.

## FILING A COMPLAINT

A customer that wishes to file a complaint about TD Ameritrade Futures & Forex or one of its employees with the Commission can contact the Division of Enforcement either electronically at https://forms.cftc.gov/fp/complaintform.aspx or by calling the Division of Enforcement toll-free at 866-FON-CFTC (866-366-2382).

A customer may file a complaint about TD Ameritrade Futures & Forex or one of its employees with the National Futures Association electronically at https://www.nfa.futures.org/basicnet/Complaint.aspx or by calling NFA directly at 800-621-3570.

## RELEVANT FINANCIAL DATA

TD Ameritrade Futures & Forex's annual audited financial statements are available here: https://www.tdameritrade.com/retail-en_us/resources/pdf/TDAFF_Website_certified annual_report.pdf

**Financial Data as of month end November, 2019**

| | |
|---|---|
| Total Equity | US$212,350,046 |
| Regulatory Capital | US$147,322,953 |
| Net Worth | US$212,350,046 |
| Proprietary margin requirements as a percentage of the aggregate margin requirement for: | |
|     futures customers | US$0 |
|     cleared swaps customers | N/A |
|     30.7 customers | N/A |
| Number of futures customers, cleared swaps customers, and 30.7 customers that comprise 50% of the FCM's total funds held for: | |
|     futures customers | 283 |
|     cleared swaps customers | N/A |
|     30.7 customers | N/A |
| Aggregate notional value of all nonhedged, principal over-the-counter transactions | N/A |
| Unsecured lines of credit the FCM has obtained but not yet drawn upon* | US$45,000,000 |
| Aggregated amount of financing the FCM provides for customer transactions involving illiquid financial products | 0 |
| Percentage of futures customer, cleared swap customer, and 30.7 customer receivable balances that the FCM had to write off as uncollectable during the past 12-month period | 0 |

At this time, TD Ameritrade Futures & Forex customers do not engage in activity that requires a 30.7 account or in cleared swap activity. As such, TD Ameritrade Futures & Forex does not have any data to report 30.7 activity or cleared swap activity.

Additional financial information on all FCMs is also available on the Commission's website at: http://www.cftc.gov/MarketReports/FinancialDataforFCMs/index.htm.

Customers should be aware that the National Futures Association (NFA) publishes on its website certain financial information with respect to each FCM. The FCM Capital Report provides each FCM's most recent month-end adjusted net capital, required net capital, and excess net capital. (Information for a twelve-month period is available.) In addition, NFA publishes twice-monthly a Customer Segregated Funds report, which shows for each FCM: (i) total funds held in Customer Segregated Accounts; (ii) total funds required to be held in Customer Segregated Accounts; and (iii) excess segregated funds, that is, the FCM's Residual Interest. This report also shows the percentage of Customer Segregated Funds that are held in cash and each of the permitted investments under Commission Rule 1.25. Finally, the report indicates whether the FCM held any Customer Segregated Funds during that month at a depository that is an affiliate of the FCM.

---

[4] As discussed below, NFA publishes twice-monthly a report, which shows for each FCM, inter alia, the percentage of Customer Funds that are held in cash and each of the permitted investments under Commission Rule 1.25. The report also indicates whether the FCM held any Customer Funds during that month at a depository that is an affiliate of the FCM.

The report shows the most recent semimonthly information, but the public will also have the ability to see information for the most recent twelve-month period. A 30.7 Customer Funds report and a Customer Cleared Swaps Collateral report provides the same information with respect to the 30.7 Account and the Cleared Swaps Customer Account.

The above financial information reports can be found by conducting a search for a specific FCM in NFA's BASIC system (http://www.nfa.futures.org/basicnet/) and then clicking on "View Financial Information" on the FCM's BASIC Details page.

*The generic source is TD Ameritrade Holding Corp. and the purpose is Contingent liquidity.

## RISK MANAGEMENT SUMMARY

TD Ameritrade Futures & Forex has established, maintains, and enforces a system of risk management policies and procedures designed to monitor and manage the risks associated with the activities of TD Ameritrade Futures & Forex. TD Ameritrade Futures & Forex maintains written policies and procedures that describe the Risk Management Program, which will be submitted to the CFTC per § 1.11. As part of the Risk Management Program, TD Ameritrade Futures & Forex has established and maintains a Risk Management Unit with sufficient authority, qualified personnel, and financial, operational, and other resources to carry out the Risk Management Program. The Risk Management Unit reports directly to Senior Management and is independent from the business unit.

### Risk Management Program

TD Ameritrade Futures & Forex currently has multiple, robust risk management processes in place. TD Ameritrade Futures & Forex's Risk Management Program includes, but is not limited to, identifying risks and risk tolerance limits, periodic risk exposure reports, and policies and procedures to monitor segregation, capital, and operational risks.

### Identifying Risks and Risk Tolerance Limits

TD Ameritrade Futures & Forex's Risk Management Program takes into account market, credit, liquidity, foreign currency, legal, operational, settlement, segregation, technological, capital, and other applicable risks with a description of the risk tolerance limits and methodology for these limits.

### Periodic Risk Exposure Reports

The Risk Management Unit provides senior management and the CFTC quarterly written reports setting forth all applicable risk exposures of TD Ameritrade Futures & Forex, any recommended or completed changes to the Risk Management Program and time frame for implementing recommended changes, and the status of any incomplete implementation of previously recommended changes to the Risk Management Program.

### Segregation Risk

As part of TD Ameritrade's Risk Management Program in regards to segregation risk, the following processes and procedures have been established:

As part of TD Ameritrade Futures & Forex's Risk Management Program in regards to segregation risk, the following processes and procedures have been established:

- Policies designed to manage segregation risk, including a process for the evaluation of depositories for segregated funds;

- A process designed to monitor the residual interest TD Ameritrade Futures & Forex seeks to maintain in the segregated funds accounts;

- A process designed for the withdrawal of cash or property from accounts holding segregated funds, where withdrawal is not for payment or on behalf of TD Ameritrade Futures & Forex's customers;

- A process for assessing the appropriateness of specific investments of segregated funds;

- Procedures requiring the appropriate separation of duties among individuals responsible for compliance with regulations relating to the protection and financial reporting of segregated funds;

- A process and procedures for timely recording of transactions;

- A program for annual training of all officers and employees regarding the segregation requirements for segregated funds;

- Policies for assessing the liquidity and mark-to-market valuation of all noncash assets held as segregated funds.

### Operational Risk

TD Ameritrade Futures & Forex's Risk Management Program includes automated controls designed to prevent the placing of erroneous trade orders. The Risk Management Program also ensures the supervision, maintenance, testing, and inspection of automated trading programs.

### Capital Risk

TD Ameritrade Futures & Forex's Risk Management Program ensures that TD Ameritrade Futures & Forex has sufficient capital to be in compliance with the Act and the regulations, and sufficient capital and liquidity to meet the reasonably foreseeable needs of TD Ameritrade Futures & Forex.

### Supervision and Testing of the Risk Management Program

TD Ameritrade Futures & Forex's Risk Management Program includes a supervisory system that is reasonably designed to ensure that the policies and procedures are diligently followed. The Risk Management Program is reviewed and tested at least annually by internal audit staff or a third party audit service that is independent of the business unit. TD Ameritrade Futures & Forex documents all internal and external reviews of the Risk Management Program.

### Distribution of the Risk Management Policies and Procedures

TD Ameritrade Futures & Forex's written risk management procedures are distributed to supervisory personnel and a record of such distribution is maintained. Written approvals and all records or reports are maintained in accordance with § 1.31.

Despite TD Ameritrade Futures & Forex's efforts to manage risk through policies, procedures, and governance structures, there can be no assurance that TD Ameritrade Futures & Forex will not sustain material losses as part of its operation.

## LEVERAGE RATIO

The Firm's Leverage Ratio is provided pursuant to CFTC Rule 1.55(k)(5). As of December 1, 2019, the Firm's Leverage Ratio was 1.21.

This Disclosure Document was first used on January 1, 2020.

TDA 614 F 01/20

TD Ameritrade Futures & Forex LLC. Securities brokerage services provided by TD Ameritrade, Inc., member FINRA/SIPC. TD Ameritrade is a trademark jointly owned by TD Ameritrade IP Company, Inc. and The Toronto-Dominion Bank. © 2020 TD Ameritrade.

TDA 614 F 01/20