UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEI WANG and JOHN LINDSTROM, Individually and On Behalf of All Others Similarly Situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>TD AMERITRADE, INC., and TD AMERITRADE FUTURES & FOREX, LLC dba THINKORSWIM<br><br>   Defendants. | Case No. 1:20-cv-04028<br><br>Hon. Virginia M. Kendall |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

Michael J. Lohnes
Peter G. Wilson
Carrie M. Stickel
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street, Suite 1900
Chicago, Illinois 60661-3693
(312) 902-5600
michael.lohnes@katten.com
peter.wilson@katten.com
carrie.stickel@katten.com

*Counsel for Defendants, TD Ameritrade, Inc.
and TD Ameritrade Futures & Forex, LLC*

Defendants TD Ameritrade, Inc. ("TDA") and TD Ameritrade Futures & Forex, LLC ("TDAFF") dba thinkorswim (collectively, "Defendants"), by and through their undersigned counsel, submit this Reply in further support of Defendants' Motion to Dismiss the Amended Complaint (Dkt. No. 24).[1] For the reasons set forth herein and in Defendants' Memorandum of Law in Support of their Motion to Dismiss (Dkt. No. 25) (the "Motion" or "Mtn."), the Amended Complaint should be dismissed with prejudice.

## INTRODUCTION

Plaintiffs[2] cannot state a claim to recoup losses suffered as a result of their decision to invest in crude oil futures before the historic collapse of the crude oil market on April 20, 2020. It is well established that Plaintiffs, as non-discretionary (self-directed) clients, were owed the narrowest of duties. Plaintiffs cite no authority that imposed a duty on TDAFF to forward (indisputably public) notices from the CME. And well-established law and the agreement between the parties make plain that TDAFF had the right, but not the obligation, to liquidate their positions. These pleading deficiencies, as well as Plaintiffs' failure to allege scienter, reliance, loss causation, and transaction causation, require dismissal of their fraud claims.

So too with Plaintiffs' contract and negligence claims. Nowhere in the Futures Client Agreement does TDAFF promise to undertake the obligations asserted, or to insure against every potential system issue—just the opposite. Plaintiffs cannot state a claim by ignoring well-established law, or waiving away unambiguous contractual terms as "fine print." Faced with all

---

[1] Defendants expressly reserve all rights in connection with their currently pending Motion to Compel Arbitration of Plaintiff Wang's claims (Dkt. No. 22). Defendants also note that Plaintiffs' Response to Defendants' Motion to Dismiss (the "Opposition" or "Opp.") is twenty-four pages long, nine pages longer than permissible under L.R. 7.1. Although Defendants requested, and were granted, an extension of the default page limit for their opening Motion before filing (Dkt. Nos. 18, 20), Plaintiffs did not request any such relief.

[2] Capitalized terms used, but not defined, herein shall have the meanings given to them in the Motion.

1

of these pleading deficiencies, Plaintiffs pin their hopes on TDAFF's FCM-Specific Disclosure Document (AC Ex. D, the "FCM Disclosures"), asserting that every duty TDAFF allegedly owed them arises "implicitly" from the description of the firm's "robust risk management" program. But these CFTC-mandated disclosures aimed at TDAFF's structure and enterprise-level financial stability say nothing about TDAFF's obligations with respect to client accounts. Those limited duties are set out in the Futures Client Agreement. The FCM Disclosures are a diversion.

Plaintiffs also fail to meaningfully address Defendants' arguments as to why the declaratory judgment claim must be dismissed, instead arguing that the TDA Client Agreement creates a dispute about whether their class action claims can be arbitrated. But that agreement is expressly limited to securities brokerage accounts with TDA (and its clearing firm TD Ameritrade Clearing, Inc.) and does not apply to Plaintiffs' claims, which are solely related to futures trading and accounts at TDAFF. Plaintiffs' Opposition confirms that Plaintiffs cannot state a claim against Defendants, and the Amended Complaint should be dismissed with prejudice.

### I. PLAINTIFFS' RULE 180.1 FRAUD CLAIM MUST BE DISMISSED.

#### A. Plaintiffs' Claim Does Not Satisfy Rule 9(b)'s Pleading Requirements.

Plaintiffs do not dispute that Rule 9(b) applies to their claim under Rule 180.1 and agree that *Pirelli Armstrong Tire Co. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011), sets forth the applicable standard to allege fraud based "upon information and belief." (Opp. at 7 (citing *Pirelli*).) A plaintiff pleading fraud on information and belief must allege "the grounds" for his suspicions or that the circumstances constituting the fraud are not accessible to him. *Pirelli*, 631 F.3d at 443; (Mtn. at 8-9). Plaintiffs do neither, despite the fact that they plead nearly every allegation on information and belief (AC at 1), and simply declare that their allegations are "plausible" and suggest that Defendants must identify "problematic"

2

allegations—a shifting of the pleading burden unsupported by case law. (Opp. at 7-8.) Both because Plaintiffs do not properly provide a basis for their widespread pleading on information and belief and because allegations made on information and belief "generally cannot satisfy" Rule 9(b), Plaintiffs' fraud claim should be dismissed. *See Pirelli*, 631 F.3d at 442.

### B. Plaintiffs Do Not Allege a Duty to Disclose or Other Actionable Misconduct.

#### 1. TDAFF Had No Duty to Disclose the Allegedly Omitted Information.

Plaintiffs' Opposition makes clear that their claims depend only on the alleged omission of "the text of the CME's warnings" that oil futures might go negative, abandoning any argument that TDAFF should have informed them that the market was at zero. (Opp. at 9.) But Plaintiffs still have not identified any duty requiring TDAFF to forward that information to them, information they concede was publicly available. (*Id.*) And Plaintiffs ignore the disclosures regarding the risk of commodities trading that were made to them. (AC Ex. A ¶ 23.) Their Rule 180.1 claim fails for each of these reasons.

Plaintiffs do not dispute that to state a fraud claim based on this alleged omission, they must first identify a duty requiring TDAFF to disclose such information. *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017). But Plaintiffs still have not done so. The Futures Client Agreement states that TDAFF has "no fiduciary obligations" to Plaintiffs. (AC Ex. A ¶ 1(e).) This is consistent with established law, which imposes only limited duties on brokers, with respect to non-discretionary accounts, "begin[ning] and end[ing] with each transaction" to execute upon a client's instructions. *De Kwiatkowski v. Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1306 (2d Cir. 2002).[3] The cases Plaintiffs cite for the general concept that brokers may owe fiduciary

---

[3] Even setting aside this disclaimer in the Futures Client Agreement and established law, Plaintiffs do not allege that a fiduciary duty existed or was breached. In fact, the word "fiduciary" does not even appear in the Amended Complaint. (*See* AC.) Plaintiffs are thus arguing, impermissibly, that TDAFF owed a duty

3

duties to certain clients do not hold otherwise. (*See* Opp. at 8 (citing *Scott v. Dime Sav. Bank of New York*, 886 F. Supp. 1073, 1079 (S.D.N.Y. 1995) (involving investment advisory relationship and citing cases holding that brokers may owe fiduciary duties to discretionary account holders); *Conway v. Icahn & Co.*, 16 F.3d 504, 510 (2d Cir. 1994) (broker owed fiduciary duty to warn non-discretionary account holder of margin calls where customer negotiated a special margin requirement)).) None of these cases (or any case for that matter) expands the very narrow duty TDAFF owed to Plaintiffs or states that a broker has a continuing duty to inform its clients of market events, pricing information, or CME Notices.

Plaintiffs do not dispute that they were explicitly and repeatedly warned that trading in futures contracts is "speculative," and the risk of loss could be "substantial" and result in "loss in excess of [their] margin deposit." (AC Ex. A ¶ 23; Mtn. at 10.) Rather than addressing these warnings, Plaintiffs repeatedly quote the FCM Disclosures discussing TDAFF's internal, enterprise-level "risk management policies and procedures" and "robust risk management processes." (*See* Opp. at 4, 8-9, 17-18.)[4] The FCM Disclosures are not an "advertisement," as Plaintiffs suggest (Opp. at 9), but rather regulatory disclosures required under CFTC Rule 1.55(k)[5] that provide organizational level information and financial data to allow clients to assess TDAFF's financial health. (AC Ex. D at 4-7.) The "Risk Management Summary" section containing the "robust risk management processes" language that Plaintiffs fixate on (Opp. at 4, 8-9, 17-18),

---

to disclose based on a fiduciary duty they did not allege. *See Knowles v. TD Ameritrade Holding Corp.*, 427 F. Supp. 3d 1070 (D. Neb. 2019), *appeal docketed*, No. 19-3684 (8th Cir. Dec. 16, 2019).

[4] Plaintiffs' discussion of puffery in connection with the FCM Disclosures (Opp. at 9) is not relevant, as Plaintiffs do not allege that the FCM Disclosures were false or misleading.

[5] *See Enhancing Protections Afforded Customers and Customer Funds Held by Futures Comm'n Merchs. and Derivatives Clearing Orgs.*, 78 FR 68505, at 68564 (Nov. 11, 2013) (CFTC adopting release providing that these disclosures are designed "to enable customers to make informed judgments regarding the appropriateness of selecting an FCM by providing information for the meaningful comparisons of business models and risks across FCMs").

explains that TDAFF's risk management policies and procedures are "designed to monitor and manage the risks associated with the *activities of TD Ameritrade Futures & Forex*," not its clients. (AC Ex. D at 8 (emphasis added).) Nor do the FCM Disclosures require TDAFF to "forward" CME Notices to its clients, otherwise warn clients of potential changes in market conditions, or manage the market risk of Plaintiffs' futures positions. (*Cf.* Opp. at 3; AC Ex. D.) Plaintiffs' unsupported argument that these disclosures create other, unwritten obligations and expand those explicitly set forth in the Futures Client Agreement fails.[6] (*See* Opp. at 8.)

The CME Notices were publicly available, in any event. (Opp. at 9.) Plaintiffs assert that they were not aware of them, even though they acknowledge that Lindstrom was aware of a "situation." (*Id.*) Regardless, "[a] plaintiff cannot credibly claim to be misled by a company's attempt to hide negative information when that same information is publicly available via alternate channels." *In re Westell Techs. Secs. Litig., Inc.*, No. 00 C 6735, 2001 WL 1313785, at *8 (N.D. Ill. Oct. 26, 2001). Accordingly, the omissions that Plaintiffs allege cannot support their fraud claim.

### 2. Plaintiffs' Liquidation Arguments Are Contradictory and Unavailing.

The Amended Complaint simultaneously alleges that TDAFF "recklessly liquidated" and failed to liquidate Plaintiffs' positions. (AC ¶¶ 2, 4.) Plaintiffs have now abandoned their "reckless liquidation" theory (s*ee generally* Opp.) in favor of a new argument that Defendants should have, but failed to, liquidate Plaintiffs' positions as a "simple" risk management measure, quoting again from the FCM Disclosures. (Opp. at 9.) However, even Plaintiffs admit that the Futures Client

---

[6] To the extent Plaintiffs argue that the FCM Disclosures are part of the Futures Client Agreement or incorporated by reference, they are incorrect. Nebraska law requires direct language expressly incorporating the second document, which does not exist in the Futures Client Agreement. *See Morrissey v. Knippelmeyer*, No. A-03-1059, 2006 WL 462429, at *9 (Neb. Ct. App. Feb. 28, 2006); *see also Bd. of Mgrs. of Chestnut Hills Condo. Ass'n v. Pasquinelli, Inc.*, 822 N.E.2d 12, 17 (Ill. App. Ct. 2004); (AC Ex. A ¶ 17 (containing merger clause)).

Agreement allowed TDAFF to liquidate their positions, but did not require TDAFF to do so. (*Id*. at 9; AC Ex. A ¶ 6 (authorizing liquidation "without prior notice and in [TDAFF's] sole discretion").) Plaintiffs can cite no authority for the proposition that general FCM Disclosures, which in no way address liquidation of client positions, override specific contractual provisions that do. (*See* Opp. at 9.) Nor do Plaintiffs attempt to reconcile this novel claim with long-standing authority giving firms the discretion to liquidate (or not) unsecured accounts. *See, e.g.*, *Cap. Options Invs., Inc. v. Goldberg Bros. Commodities, Inc.*, 958 F.2d 186, 190 (7th Cir. 1992); (*see also* Mtn. at 11-12). Plaintiffs' allegations regarding liquidation do not support their fraud claim.

### 3. The Alleged System Issue Does Not Support a Fraud Claim.

Plaintiffs attempt to rewrite the unambiguous language of the Futures Client Agreement by arguing that it prohibits claims based on system failures, but not alleged failures to "set up" the system as Plaintiffs now retroactively claim TDAFF should have done. (Opp. at 10-11.) However, the Futures Client Agreement broadly disclaims all liability for systems failures, defective performance, or its clients' inability "to engage in any futures related activities" whether because of "electronic or other mechanical failure" or "*any other reason*." (AC Ex. A ¶ 10 (emphasis added).) This language squarely forecloses Plaintiffs' claims.

Plaintiffs also fail to distinguish case law precluding their claims. Plaintiffs instead argue that *Zerman v. Jacobs*, 510 F. Supp. 132, 134 (S.D.N.Y. 1981), and *Alaska Electric Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 827 (S.D. Cal. 2006), are inapposite because the wrongdoing in those cases was allegedly "knowing" or "willful." (Opp. at 10.) But Plaintiffs here likewise allege that TDAFF's purported system issue was "knowing, not inadvertent." (*Id*.) Beyond that, Plaintiffs cite no authority holding that an alleged failure to design a trading platform to account for an uncertain, specific market event can be fraud. TDAFF's alleged system issue cannot support Plaintiffs' Rule 180.1 claim.

6

### C. Plaintiffs Do Not and Cannot Allege the Scienter Required for Fraud.

Plaintiffs argue that they have adequately alleged scienter because TDAFF was aware from public CME Notices that oil futures prices might go negative.[7] (Opp. at 11-12.) But merely alleging that a defendant had knowledge of an uncertain future event does not demonstrate the scienter required for a fraud claim. *See In re Chicago Bd. Options Exchange*, 390 F. Supp. 3d 916, 934 (N.D. Ill. 2019) (plaintiffs' allegations that defendants had knowledge that the system they designed was particularly vulnerable to manipulation did not satisfy scienter requirement). To plead scienter, a plaintiff must allege facts showing either (i) that defendants had "both motive and opportunity to commit fraud" or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *Rubinstein v. Gonzalez*, 241 F. Supp. 3d 841, 854-55 (N.D. Ill. 2017). Plaintiffs do neither. Though Plaintiffs admit that reckless conduct requires "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care," (Opp. at 11-12, citing *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977)), they make no attempt whatsoever to explain how TDAFF's alleged receipt of, and failure to forward, publicly available CME Notices demonstrates such recklessness. (Opp. at 12.) Plaintiffs also fail to allege any motive,[8] despite acknowledging that their failure to do so "is particularly significant" to the evaluation of their claims.[9] (Opp. at 12;

---

[7] Plaintiffs make no attempt to argue that they have adequately alleged scienter with respect to their liquidation and system issue claims. (*See* Opp. at 11-12.) These claims can and should be dismissed for this reason alone.

[8] Plaintiffs' Opposition quibbles with the idea that TDAFF has to cover any losses Plaintiffs sustained through the historic market events on April 20, 2020. (Opp. at 5 n.1.) Plaintiffs ignore that even if TDAFF "pass[es]" a customer's losses through to his account (*id.*), if the customer cannot or does not satisfy that loss, TDAFF remains ultimately responsible for covering the loss.

[9] For this same reason, Plaintiffs cannot satisfy (and do not even address) Rule 9(b)'s requirement that Plaintiffs identify what exactly "the defendants obtained as a consequence of the fraud." *Boltz v. Flagship Partners Ltd. P'ship*, No. 89 C 9103, 1990 WL 125411, at *3 (N.D. Ill. Aug. 22, 1990).

7

*McGee v. Am. Oriental Bioengineering Inc.*, No. CV 12-5476 FMO (SHX), 2014 WL 12586107, at *15 (C.D. Cal. Sept. 23, 2014).) Plaintiffs' failure to adequately plead scienter requires dismissal.

### D. Plaintiffs Do Not Allege Reliance.

Plaintiffs have never alleged that they wanted, intended, or tried to exit their positions on April 20, 2020, but were unable to do so because of TDAFF's alleged omission or system issue. (*See* Mtn. at 23; *see generally* AC.) Plaintiffs also blithely ignore that the Futures Client Agreement disclaims liability for, and thus discloses the possibility of, defective system performance. (Opp. at 13.) Plaintiffs' attempt to distinguish *Wachovia Securities, LLC v. Neuhauser* thus fails: in that case, the plaintiff could not bring a fraud claim premised on an alleged "omission" that the defendant had actually disclosed. No. 04 C 3082, 2004 WL 2526390, at *8 (N.D. Ill. Nov. 5, 2004). Similarly, in addition to the Futures Client Agreement's numerous warnings regarding the risks associated with commodities trading, Plaintiffs admit that Lindstrom "was aware that there was a situation" with the falling prices of oil futures, echoing the Amended Complaint's allegations that he was aware on April 20, 2020, that "the price of the Crude Oil contracts w[as] declining." (Opp. at 9; AC ¶ 45.) Under these circumstances, it is impossible for Plaintiffs to allege any reliance on TDAFF's alleged omissions regarding falling prices and allegedly fraudulent conduct.

Plaintiffs also imply that Defendants' argument "that Plaintiffs must have known about the likelihood of oil going negative" due to widespread public discussion turns on whether Plaintiffs were actually aware of such discussion.[10] (Opp. at 13-14.) Regardless of whether Plaintiffs

---

[10] Plaintiffs take issue with the substance of the articles Defendants cited in their Motion. (Opp. at 13-14.) However, Defendants cited these articles as nonexclusive examples of the widespread coverage the possibility of negative oil futures received in the weeks before April 20, 2020. (Mtn. at 15.)

8

actually read articles discussing the possibility, they are charged with reasonable diligence in the conduct of their affairs, and where allegedly omitted information is publicly available, it cannot support a fraud claim. *See In re Westell Techs.*, 2001 WL 1313785, at *8. Thus, because the CME Notices were publicly available, as Plaintiffs admit (Opp. at 9), and the possibility of negative oil futures prices was widely reported on, they cannot claim to have relied on any omission about the content of those notices. *See id.*

### E. Plaintiffs Do Not Allege Loss or Transaction Causation.

Plaintiffs fail to adequately plead multiple aspects of the causation requirement, precluding their Rule 180.1 claim. As an initial matter, Plaintiffs incorrectly declare that cases discussing § 10(b) of the Securities Exchange Act have "nothing to do" with Rule 180.1. (Opp. at 14-15.) However, Courts routinely look to case law interpreting SEC Rule 10b-5 when analyzing Rule 180.1 claims, as intended by the CFTC. *See Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037, 1053 (N.D. Ill. 2016). Plaintiffs then muddle transaction and loss causation, stating that the latter is "fraudulently causing Plaintiffs to make a purchase or sale." (Opp. at 14.) But, as explained in the Motion, it is the "transaction causation" element that requires Plaintiffs to "demonstrate that the defendant's conduct induced them to enter into the transactions." (Mtn. at 16 (citing *Kayne v. PaineWebber*, 703 F. Supp. 1334, 1342 (N.D. Ill. 1989)).) Plaintiffs admit they cannot and do not allege transaction causation, arguing they "do[] not have to show 'transaction causation' here." (Opp. at 14-15.) Again, that is not the law, and Plaintiffs cite no authority suggesting that it is.

Plaintiffs also wrongfully argue that loss causation is "not part of the § 180.1 analysis," (Opp. at 15), despite listing it as an element of their claim "under 7 U.S.C. § 9, and the corresponding section in the C.F.R." earlier in their Opposition. (Opp. at 7 (citing *Cornielsen v. Infinium Cap. Mgmt.*, 916 F.3d 589, 598 (7th Cir. 2019)).) Plaintiffs were correct the first time:

9

loss causation is a required element of their claim. *Cornielsen*, 916 F.3d at 598. Again, Plaintiffs admit that they do not and cannot allege loss causation because nothing TDAFF said or did not say affected the price of crude oil (Opp. at 15), which requires dismissal of their Rule 180.1 claim.

## II. PLAINTIFFS' § 6B(E)(3) CLAIM FAILS FOR THE SAME REASONS AS THEIR RULE 180.1 CLAIM.

Plaintiffs also must satisfy Rule 9(b)'s pleading requirements and common law elements of fraud to state a § 6b(e)(3) claim. *U.S. Commodity Futures Trading Comm'n v. Reisinger*, No. 11 C 8567, 2013 WL 3791691, at *10 (N.D. Ill. July 18, 2013). As set out above, each allegation about Defendants is inappropriately pled on information and belief, in violation of Rule 9(b). Even so, Plaintiffs have not pled with particularity any of the elements required to establish a violation of § 6b(e)(3) for the reasons discussed in connection with their Rule 180.1 claim.

## III. PLAINTIFFS FAIL TO STATE A BREACH OF CONTRACT CLAIM.

The Amended Complaint alleges that TDAFF breached the Futures Client Agreement by: (i) failing to contact Plaintiffs before liquidating their positions; and (ii) failing to abide by so-called "customs and usages" of the CME. (AC ¶¶ 101-06.) Plaintiffs' Opposition abandons both of these theories, which are directly contradicted by the express terms of the Futures Client Agreement. (Mtn. at 17-18.) Plaintiffs now admit that the Futures Client Agreement: (i) provides TDAFF with "discretion to liquidate [a] client's open positions, *without notice*"; and (ii) disclaims liability "for damages stemming from violations of CME rules." (Opp. at 3, 17.) Further, Plaintiffs fail to respond altogether to Defendants' arguments that no CME rules were alleged or violated and that the provision in the Futures Client Agreement referencing CME, rules, customs, and usages does not create a contractual obligation.[11] (Mtn. at 17-18.)

---

[11] Plaintiffs incorrectly argue, in their section on good faith and fair dealing, that Defendants cite "*Appert v. [Morgan Stanley] Dean Witter, Inc.*, No. 08-CV-7130, 2010 WL 5186765, at *4 (N.D. Ill. Dec. 9, 2010), *aff'd*, 673 F.3d 609 (7th Cir. 2012) for the proposition that client agreements do not create contractual

10

As with their fraud claims, Plaintiffs now seek refuge for their breach of contract claim in the FCM Disclosures, asserting for the first time that "[a]nything not disclaimed is . . . implicitly, provided under the promise of robust risk management." (Opp. at 17.) Plaintiffs cannot argue a new theory that is not alleged in the Amended Complaint. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). Regardless, Plaintiffs do not explain how the FCM Disclosures are applicable to the conduct alleged or relevant to their breach of contract claim. Indeed, these disclosures are not even part of the contract that TDAFF allegedly breached. (*See supra* note 6.) And, as discussed above, the FCM Disclosures discuss TDAFF's structure and organizational-level risks. (AC Ex. D at 8.) Plaintiffs also argue that any contractual ambiguities should be resolved in their favor, but there are no ambiguities here. (Opp. at 17.) The Amended Complaint does not allege that the Futures Client Agreement is ambiguous because it is not; its plain language forecloses Plaintiffs' breach of contract claim. Accordingly, this claim must be dismissed.

### IV. PLAINTIFFS' GOOD FAITH AND FAIR DEALING CLAIM MUST BE DISMISSED.

Plaintiffs' claim that TDAFF breached the implied covenant of good faith and fair dealing cannot survive because "[t]he scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms" of the Futures Client Agreement. *Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 655 N.W.2d 390, 400 (Neb. 2003); (Mtn. at 19). Plaintiffs admit that "the contract which specifically allows Defendants to liquidate Plaintiffs' positions does not state

---

agreements." (Opp. at 18.) Defendants instead relied on a 2009 decision from the *Appert* case for the proposition that the "customs and usages" provision in the Futures Client Agreement "does not create a contractual obligation on the part of the firm" and thus cannot support Plaintiffs' breach of contract claim. As such, Plaintiffs' attempt to distinguish the 2010 case is irrelevant, especially in the context of good faith and fair dealing.

11

explicitly that they must do so." (Opp. at 9.) Likewise, Plaintiffs acknowledge that the Futures Client Agreement warns of, and disclaims liability for, "the failure of any system" (*see id.* at 18; Mtn. at 13), but fail to explain why these provisions do not foreclose their claim.

Plaintiffs' authority, *RSUI Indemnity Co. v. Bacon*, 810 N.W.2d 666 (Neb. 2011),[12] supports TDAFF's argument. There, the court held that the defendant insurance company did not violate the implied covenant when it sought a workers' compensation credit because doing so was not expressly prohibited by the relevant agreement, even though the agreement stated that the defendant "did not believe" it would seek such a credit. *RSUI*, 810 N.W.2d at 670, 674-75. Similarly, here, Plaintiffs' claim is foreclosed under the terms of the Futures Client Agreement. Additionally, Plaintiffs fail to distinguish persuasive Northern District of Illinois authority cited by Defendants that weighs heavily in favor of dismissal of this claim. (*See* Mtn. at 19 (citing *Ocean Tomo, LLC v. PatentRatings, LLC*, 262 F. Supp. 3d 553, 558 (N.D. Ill. 2017); *Advantage Futures, LLC v. Herm, LLC*, No. 18-cv-2005, 2019 WL 7290555, at *3 (N.D. Ill. Dec. 30, 2019)).)

As with their other claims, Plaintiffs look for salvation in the FCM Disclosures. (Opp. at 18.) But Plaintiffs' tack is no more successful with this claim either. Again, TDAFF's FCM Disclosures are "designed to monitor and manage the risks associated with the *activities of TD Ameritrade Futures & Forex*," not risks associated with Plaintiffs' trading decisions, and they do not alter the express terms of the Futures Client Agreement. (AC Ex. D at 8.) Because Defendants acted according to the terms of the Futures Client Agreement, and did not breach any affirmative duty, Plaintiffs' good faith and fair dealing claim must be dismissed.

---

[12] Plaintiffs incorrectly cite this case as "*SUI Indem. Co. v. Bacon.*" (Opp. at 17-18.)

## V. PLAINTIFFS CONCEDE THAT THEIR NEGLIGENCE CLAIMS MUST BE DISMISSED.

Defendants' Motion identified multiple reasons why Plaintiffs failed to state a negligence claim. Plaintiffs address only one—the economic loss doctrine—and do not succeed in that effort. For starters, Plaintiffs completely ignore *Knowles v. TD Ameritrade Holding Corp.*, 427 F. Supp. 3d 1070 (D. Neb. 2019), a case directly on point instructing that Plaintiffs' negligence claims be dismissed. (Mtn. at 22.) Beyond that, Plaintiffs agree that the economic loss doctrine is applicable, acknowledging that it precludes tort remedies "where the damages caused were limited to economic losses and where . . . the duty which was allegedly breached arose solely from the contractual relationship between the parties." (Opp. at 19; *see also* Mtn. at 20-22.) But Plaintiffs fail to identify a valid extra-contractual duty that was owed to them or otherwise explain why the doctrine does not bar their claims,[13] conceding that their alleged damages are "based upon the contract." (Opp. at 19.) Plaintiffs do not address causation, which is not adequately alleged, or the fact that the liability waiver in the Futures Client Agreement is applicable and precludes their negligence claim. Plaintiffs thus have conceded these arguments. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). For all of these reasons, Plaintiffs' gross negligence and negligence claims must be dismissed.

## VI. PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IS NOT JUSTICIABLE.

Plaintiffs argue there is a justiciable controversy because there are two arbitration agreements—one with TDA and one with TDAFF—that are allegedly contradictory.[14] (Opp. at

---

[13] Plaintiffs' attempt to distinguish "brokerage firms and individual brokers" is illogical, as is their point about discretionary and non-discretionary accounts. (Opp. at 19-20.) There is no question that Plaintiffs had non-discretionary accounts, meaning Plaintiffs made all the trading decisions, and that TDAFF did not owe them a fiduciary duty. *Supra* section I(B)(1); (*see also* AC Ex. A ¶ 1(d) (TDAFF "is not [] acting as [] a fiduciary to Client and has no discretionary authority or control over the Account")).

[14] Plaintiffs' declaratory judgment argument is also rife with arguments not alleged in or supported by the Amended Complaint. For example, Plaintiffs argue, but do not allege, that funds were transferred from their securities accounts to futures accounts to cover their debit balances and that their two accounts shared

13

21.) Plaintiffs' arguments fall flat. The plain language of the agreements attached to the Amended Complaint—the Futures Client Agreement with TDAFF (Exhibit A), and the brokerage Client Agreement with TDA (Exhibit B)—leave no doubt that the Futures Client Agreement applies to this lawsuit involving trading in Plaintiffs' futures accounts with TDAFF.[15]

Setting aside the allegations that impermissibly lump TDA with TDAFF (*see* Mtn. at 25) and the inapplicable agreement, Plaintiffs' *sole* allegation with respect to TDA is that Plaintiffs were required to open an account with TDA before opening an account with TDAFF. This is not enough. And because the securities account and futures account were distinct accounts, they of course did not share the same number; Plaintiffs' argument in this regard makes no sense (Opp. at 20). Rather, as set forth in Section 3 of the Futures Client Agreement, the establishment of a brokerage account with TDA simply allowed "available cash" held in the TDAFF futures account to be "automatically swept" into the securities brokerage account with TDA. (AC Ex. A ¶ 3.) This has nothing to do with the conduct alleged in the Amended Complaint: trading in futures and options on futures through TDAFF. (*See, e.g.*, AC ¶ 14.) TDAFF, not TDA, allegedly received (and failed to "forward") the CME Notices at issue, allegedly failed to liquidate Plaintiffs' positions, and allegedly suffered a system issue.[16] (*See, e.g.*, *id.* ¶¶ 40; Opp. at 9.) The Arbitration provision in the TDA Client Agreement only applies to controversies "arising out of or relating

---

the same number. (Opp. at 20-21.) Plaintiffs also seem to suggest, without support, that the TDA arbitration provision must comply with CFTC regulations. (*Id.* at 23.) TDA is a registered broker-dealer and is regulated by the SEC, not the CFTC. (Mtn. at 4.)

[15] The TDA Client Agreement "governs all brokerage accounts that [Plaintiffs] open with [TDA]," and "when applicable, TD Ameritrade Clearing, Inc., TD Ameritrade's clearing broker-dealer." (AC Ex. B ¶ 1.) Its provision on arbitration (Section 12) applies to disputes "arising out of or relating to this [Client Agreement]." (*Id.* ¶ 12.) Plaintiffs' Futures Client Agreement, on the other hand, is with TD Ameritrade Futures & Forex LLC, "a registered Futures Commission Merchant ("FCM") with the CFTC." (AC Ex. A at 1.) The Futures Arbitration Agreement covers disputes "arising out of or relating to my futures account [and] transactions with [TDAFF] pursuant to the Futures Client Agreement." (Dkt. No. 22-1 at 1.)

[16] As argued in the Motion, TDA should be dismissed from this action for this additional reason.

to" the agreement, the relationship with TDA, or services provided by TDA. (AC Ex. B ¶ 12.) The TDA Client Agreement does not apply to their claims, and Plaintiffs cannot use it to create a justiciable controversy.

Nor have Plaintiffs offered any authority demonstrating that they can assert a private right of action for violation of the CFTC recordkeeping regulations. (Mtn. at 24-25.) The one (vacated) decision they cite dealt with different regulations. (Opp. at 22-23 (citing *Ping He (Hai Nam) Co. v. NonFerrous Metals (U.S.A.) Inc.*, 22 F. Supp. 2d 94, 106 (S.D.N.Y. 1998), *opinion vacated in part on reconsideration sub nom. Ping He (Hai Nam) Co, Ltd. v. Nonferrous Metals (U.S.A.) Inc.*, 187 F.R.D. 121 (S.D.N.Y. 1999)).) And even if Congress intended for the private right of action to extend to the CFTC regulations at issue, Section 22 of the CEA requires a private plaintiff to allege "actual damages" to assert a private right of action under any provision, as Plaintiffs point out. (Opp. at 22.) Plaintiffs do not allege that they suffered any "actual damages" as a result of the alleged recordkeeping violations. (*See* AC ¶¶ 108-17.) Nor have Plaintiffs explained how violation of a recordkeeping rule would render the agreement invalid or unenforceable. (Mtn. at 25; *see also* Opp. at 24.) Accordingly, Plaintiffs' declaratory judgment claim must be dismissed.

## CONCLUSION

For the reasons set forth above and in the Motion, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

Dated: October 27, 2020                                          Respectfully submitted,

                                                   By:      /s/ Michael J. Lohnes
                                                            *One of the Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certifies that, on October 27, 2020, he caused a true and correct copy of the foregoing to be served upon all parties by electronically filing the same with the Pacer/ECF system.

                                      /s/ Michael J. Lohnes
                                      *One of the Attorneys for Defendants*