IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN LINDSTROM, *individually and on behalf of others similarly situated*, </br></br> *Plaintiff*, </br></br> v. </br></br> TD AMERITRADE, INC., and TD AMERITRADE FUTURES & FOREX, LLC d/b/a THINKORSWIM, </br></br> *Defendants*. | No. 20 C 4028 </br></br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants TD Ameritrade, Inc. ("TDA") and TD Ameritrade Futures & Forex, LLC dba thinkorswim ("TDAFF") (collectively, "Defendants") Motion to Dismiss Plaintiff John Lindstrom's Third Amended Complaint (Dkt. 73). For the reasons given herein, the Motion is granted and the Third Amended Complaint is dismissed with prejudice.

## BACKGROUND

The following factual allegations come from Lindstrom's Third Amended Complaint (Dkt. 71, "TAC") and the Court assumes their truth for purposes of this Motion. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). The Court assumes familiarity with its prior opinions in this case, that lay out many of the same facts alleged in the present TAC. *See Lindstrom v. TD Ameritrade, Inc.*, No. 20 C 4028, 2020 WL 7398792 (N.D. Ill. Dec. 17, 2020); *see also* Dkt. 62.

Lindstrom held a brokerage account with Defendant TDAFF and a securities account with Defendant TDA. (TAC ¶25-27). To open these accounts, Lindstrom had to enter into a Futures

1

Client Agreement. (*Id.*) On April 20, 2020, Lindstrom owned crude oil futures positions. (*Id.* ¶31). These futures contracts are traded on the Chicago Mercantile Exchange ("CME"). (*Id.*)

On April 20, 2020, up against warnings from CME that oil prices could go negative (as a result of market volatility related to the COVID-19 pandemic), TDAFF did not liquidate positions or communicate this possibility to its customers. (*Id.* ¶36). TDAFF took no action to limit the losses of investors when crude oil futures fell into the negatives. (TAC ¶56.) TDAFF did not, for example, liquidate Lindstrom's positions as soon as they fell into the negatives; instead, TDAFF allowed those positions to remain open as they plummeted further and further into negative territory. (*Id.*) TDAFF also did not contact its clients when the market hit zero to give them the option of exiting, modifying, or offsetting their positions by placing an order. (*Id.* ¶41.) Nor did TDAFF ever alert its clients prior to April 20th that the futures contracts could fall into the negatives. (*Id.* ¶¶38, 53.)

On April 20, 2020, Lindstrom believed he had deposited enough money to meet the margin call and maintain the crude oil contracts, but the positions were not closed out when the price became negative and his account did not contain enough cash to maintain the positions. (*Id.* ¶¶54-55). TDAFF permitted the position to remain in the account after the account was under-margined, and the untimely forced liquidation of Lindstrom's positions resulted in a $66,390 loss. (*Id.* ¶¶55-56).

A different plaintiff, Wei Wang, filed an initial complaint against Defendants TD Ameritrade ("TDA") and TD Ameritrade Futures & Forex ("TDAFF") on July 9, 2020, which was subsequently amended to add Lindstrom on September 11, 2020. (Dkt. 1; Dkt. 17). Wang and Lindstrom alleged violation of the Commodity Exchange Act ("CEA") and related regulations, breach of the implied covenant of good faith and fair dealing, negligence, and breach of contract.

On December 12, 2020, the Court compelled Wang to arbitrate his claims and dismissed them without prejudice, dismissed Lindstrom's claims without prejudice, entered judgment and terminated the case. (Dkt. 51; Dkt. 52; Dkt. 53); *see also Lindstrom*, 2020 WL 7398792 (N.D. Ill. Dec. 17, 2020). Lindstrom moved for leave to file a Second Amended Complaint on January 15, 2021. (Dkt. 54). The Court then struck the entry of judgment, which was entered in error, and reopened the case. (Dkt. 60). The Court considered Lindstrom's Proposed Second Amended Complaint but found that it did not adequately address the deficiencies it found when dismissing the First Amended Complaint. (Dkt. 62). Because the Proposed Second Amended Complaint could not withstand a motion to dismiss pursuant to Rule 12(b)(6), amendment was futile. (*Id.*)

Lindstrom was denied leave to file his Proposed Second Amended Complaint, but the Court allowed him to file another amended complaint if he was able to do so. In permitting such an amendment, the Court cautioned Lindstrom:

> Lindstrom may file an amended complaint which comports both with this Court's order dismissing the First Amended Complaint and the present order. Lindstrom is encouraged to read both orders carefully and only file an amended complaint which addresses each of the enumerated deficiencies.

(*Id.* at 3). Lindstrom subsequently filed the instant Third Amended Complaint, which contains exactly three allegations not found in his Proposed Second Amended Complaint. (Dkt. 71 at ¶¶ 7, 52, 74; *see also* Dkt. 74-1).

## LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). A party need not plead "detailed factual allegations,"

3

but "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Lindstrom's claims under § 6b(e)(3) of the CEA and 17 C.F.R. § 180.1 sounds in fraud. Any allegation of fraud must be "state[d] with particularity," although "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This heightened pleading requirement protects against the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) requires that the plaintiff state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Svc's, Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). In other words, the plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition*, Inc., 934 F.3d 730, 738 (7th Cir. 2019).

## DISCUSSION

### I. Commodity Exchange Act (CEA) Fraud Claim (Counts I and III)

Count I of the TAC alleges that Defendants violated the Commodity Exchange Act ("CEA), 7 U.S.C. § 9, and 17 C.F.R. § 180.1, a regulation promulgated by the CFTC pursuant to the CEA. Lindstrom alleges that Defendants violated 17 C.F.R. § 180.1(a)(3):

> (a) It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:

4

>   ...
>
>   (3) Engage, or attempt to engage in any act, practice, or course of
>   business, which operates or would operate as a fraud or deceit upon
>   any person.

Therefore, the Court previously found that Lindstrom needed to plausibly allege (1) a material misrepresentation or omission by the defendant, (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Lindstrom v. TD Ameritrade, Inc.*, 2020 WL 7398792, at *3 (N.D. Ill. Dec. 17, 2020), citing *Cornielsen v. Infinium Cap. Mgmt.*, 916 F.3d 589, 598 (7th Cir. 2019). The Court, in granting Defendants' motion to dismiss the First Amended Complaint, provided Lindstrom with a thorough analysis of his claim and each of the ways it was deficient and failed to allege *any* of the elements of his fraud claim. *See Lindstrom*, 2020 WL 7398792 at *3-*5 (finding pleading deficiencies in alleging a material omission, scienter, reliance, loss, and loss causation). The Court rejected Lindstrom's Proposed Second Amended Complaint for failing to correct these deficiencies, but Lindstrom brings nearly identical allegations here now and argues for a different outcome.

### A. *Material Omission.*

Lindstrom identifies three omissions that he alleges support his fraud claim: (1) that TDAFF failed to notify/advise their customers of material information regarding the crude oil markets (TAC ¶87); (2) that TDAFF failed to act to mitigate Lindstrom's losses by offsetting his positions (TAC ¶88); and (3) that TDAFF failed to permit its trading platform to recognize negative pricing (TAC ¶88). With respect to the first two, Lindstrom merely states that he "standings on [his] prior briefing on these questions, and largely presents these claims in the Complaint for the purposes of appeal." (Dkt. 78-1 at 5, n.2). It is not necessary or appropriate to

5

replead rejected claims for purposes of appeal and the Court will not spend any further time on these claims. They are rejected for all the reasons given in the Court's prior opinions on identical allegations. (*Lindstrom*, 2020 WL 7398792 at *3-4; Dkt. 62 at 2).

This leaves the allegation that Defendants failed to allow trades at negative prices. Defendants argue that Lindstrom has still failed to state an actionable omission. Lindstrom contends that "a more fully fleshed out allegation that [he] attempted to exit his position and was unable to do so changes the analysis" from the Court's prior orders. (Dkt. 78-1 at 1). It does not. Lindstrom correctly notes that the Court called this alleged omission – that TDAFF failed to enable protocols on its platform that would permit investors to place negatively-priced trades – his "best allegation of a legally actionable omission." *Lindstrom*, 2020 WL 7398792 at *4. The Court went on to say that the issue was that "there is no allegation that Lindstrom ever tried to place a trade while the prices were in the negatives." *Id.* Lindstrom argues that the TAC "fixes this problem" because it alleges that "Plaintiff attempted to leave his positions and was unable to do so." (Dkt. 78-1 at 8). However, there is not a single allegation in the TAC that Lindstrom attempted to place a trade while prices were in the negatives. His new allegations are that "Plaintiff tried to access and [sic] his positions to make trades but was unable to. He tried to reach customer service and was unable to" (TAC ¶7) and that "**[d]espite repeated efforts**, Plaintiff Lindstrom was not even able to reach anyone in the customer order desk to place an order to exit his positions. **Despite his efforts, he was unable to access his positions online**." (TAC ¶52) (new allegation in bold). The allegation that he points to (that "clients of TDFF were not able to place orders in the May 20 Crude Oil products") is not adequate to find that Lindstrom ever attempted to place such a trade (and indeed, that allegation was in the Proposed SAC and was insufficient then.) The Court has explicitly explained the need for such an allegation twice now. (*Lindstrom*, 2020 WL 7398792 at

6

*3-4, Dkt. 62 at 2). Despite Lindstrom's claim that a "reasonable and plain reading" of the TAC is that he "attempted to leave his position and was thwarted because his position was negative," there is no such allegation in the Complaint. The Court can only agree with Defendants—if Lindstrom were able to make such an allegation in his third attempt to state a claim, he would have. Even taking all of Lindstrom's allegations as true, as the Court must at this stage, Lindstrom has not made any allegation that he ever tried to place a trade while the prices were in the negatives, and his fraud claim thus fails to allege an actionable omission. The claim fails on this basis alone, but the Court (for the third time) will consider the remaining elements.

### B. Scienter

Lindstrom claims that he had adequately alleged scienter in his previous pleadings "but for the lack of the now-repaired deficiency having to do with Plaintiff's attempt to exit his positions in the negative." (Dkt. 78-1 at 13). As discussed above, Lindstrom has *not* pled that he attempted to exit his positions in the negative. However, as Defendants point out, this was not the only reason Lindstrom failed to plead this element of his fraud claim. (Dkt. 74 at 8-9). The Court also found in its prior orders that it was "not reasonable to infer that TDAFF made any of the alleged omissions with an intent to deceive or defraud. In fact, TDAFF had an obvious motive to inform its customers of the market conditions." *Lindstrom*, 2020 WL 7398792 at *4. The Court found it was not reasonable to infer that TDAFF intended for Lindstrom to suffer these losses. The Court further found in rejecting his Proposed SAC (which, again, is nearly identical to the TAC) that Lindstrom had not pled adequate facts to support an inference that TDAFF had "a mental state embracing *intent* to deceive, manipulate, or defraud." (Dkt. 62 at 2, citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (emphasis added).) Lindstrom's attorney argument

7

in his Opposition cannot save him, when the TAC adds zero new allegations that TDAFF had an intent to deceive, manipulate, or defraud Lindstrom.

### C. Reliance

Lindstrom's theory of reliance has remained the same throughout this case: that he would have sold his positions sooner had TDAFF not failed to update its systems to accept negatively priced trades. Defendant argues that Lindstrom has failed to plead any actual reliance because he did not allege that he would have exited his position sooner if not for the inability to do when the order was negatively priced. (Dkt. 74 at 9, Dkt. 80 at 8). Lindstrom argues that he alleges that he "relied on his ability to exit his positions, and was unable to do so." (Dkt. 78-1 at 11). Reliance must be *on the omission* – the omission is not that Lindstrom generally was unable to place a trade, but that TDAFF did not allow *negative* trades. Because he never alleges that he tried and failed to make a trade that was negatively priced, there is no reliance.

### D. Loss & Loss Causation

The Court previously found that Lindstrom did not plead that Defendants' alleged omissions proximately caused his losses instead of the market volatility that came part and parcel with the COVID-19 pandemic. *Lindstrom,* 2020 WL 7398792 at *5, Dkt. 62 at 2. Defendants argue that the Third Amended Complaint "offers nothing to address these defects." (Dkt. 74 at 9). Lindstrom does not address this argument nor point to any new allegations on proximate causation. This element is not met for all the reasons given in the Court's prior orders. (*See Lindstrom* at *5; Dkt. 62 at 2).

Count III, alleging violation of § 6b(e)(3) of the CEA is a single sentence simply incorporating Lindstrom's other complaint allegations. (Dkt. 71 at ¶ 97). Count III is once again dismissed for the same reasons as Count I.

8

II. **Common Law Claims (Counts II, IV, V, VII)**[1]

A. **Good Faith and Fair Dealing (Count II)**

Count II of the TAC alleges that TDAFF breached the implied covenant of good faith and fair dealing related to the Futures Client Agreement. Lindstrom's allegation is that TDAFF violated its covenant by not liquidating his contracts until they were excessively under-margined, and by not creating a means by which Lindstrom could have placed a negative trade. In its Order dismissing the First Amended Complaint, the Court explained:

> Lindstrom's theory here is that TDAFF violated this covenant by not liquidating his contracts until they became excessively under-margined and by not creating a means by which Lindstrom could have placed an order to exit his positions at a negative price. Lindstrom does not identify any contract provision that would have required TDAFF to take either of those actions. With respect to liquidation, the Futures Client Agreement specifically grants TDAFF the "sole discretion" to liquidate "without prior notice to Client" so as to eliminate any margin deficiency, and that "Client shall remain liable to TDAFF for any loss or debit balance that results." (Dkt. 17 at p. 37.) The action TDAFF took here is specifically contemplated by the contract, so it did not injure Lindstrom's rights under the contract. With respect to placing negatively priced orders, it bears repeating that Lindstrom never alleges that he attempted to place such an order or that he knew that TDAFF did not have the capability to fulfill such an order. As such, TDAFF's failure to create such a system caused him no injury.

*Lindstrom*, 2020 WL 7398792 at *5. Lindstrom's Proposed SAC also "fail[ed] to identify such contractual provisions . . . and Lindstrom [did] not allege he attempted to place any negatively priced trades." (Dkt. 62 at 2).

The TAC remains almost wholly unchanged from the Proposed SAC, and the three additional allegations do not identify any contractual provisions of the Futures Client Agreement (or any other contract) that required TDAFF to allow liquidation in a more commercially

---

[1] There is no Count VI in the Third Amended Complaint.

9

reasonable manner. As discussed with respect to Count I, Lindstrom fails to allege that he attempted to place any negatively priced trade. Lindstrom's attempts to reargue an issue the Court already decided, without the benefit of any additional allegations, falls far short of stating a claim on this count.

Lindstrom suggests that "[t]he only problem with the complaint initially, as the Court noted, was standing." (Dkt. 78-1 at 12-13). He alleges he has remedied that problem, but that is incorrect. The first problem is that Lindstrom has now failed three times to identify any contractual provision requiring TDAFF to allow him to place negatively priced trades. On that point alone, this claim fails. Lindstrom's failure to allege he ever attempted to place a trade while prices were negative is a second problem that has not been fixed (as discussed herein), and this claim is dismissed.

### B. Breach of Contract (Count VII)

In rejecting the Proposed SAC, the Court reminded Lindstrom of its prior finding that "the contract in question specifically permitted TDAFF to liquidate his positions without prior notice, Lindstrom did not identify contractual provisions requiring TDAFF or TDA to update its systems, or that any act or failure to act on the part of TDAFF or TDA caused him harm. (Dkt. 52 at 12)" and concluded that "[t]he proposed Second Amended Complaint does not offer any contractual provisions to support this claim other than those previously rejected by this Court and nothing in the way of facts supporting causation." The same is true of the nearly identical Third Amended Complaint. Instead of identifying any new allegations that support this claim (there are none), Lindstrom merely cribs from his previous briefing and raises an argument the Court has rejected. (*Compare* Dkt. 33 at 16-17 *with* Dkt. 78-1 at 12-13). The Court will not belabor this analysis: Lindstrom was instructed to file a new complaint, if he could, that complied with the Court's

orders. On this count and others, he has not done so. Because Lindstrom does not identify any contractual provision that was violated and there are no new allegations supporting this previously rejected contract claim, it remains deficient for all the reasons given in the Court's prior opinions.

### C. Negligence and Gross Negligence (Counts IV and V)

The parties agree that Plaintiff's allegations of negligence and gross negligence remain unchanged from his prior complaints and should be dismissed for the same reasons that the Court previously determined. (Dkt. 78-1 at 5-6, Dkt. 80 at 10). These claims were dismissed because Lindstrom suffered pure economic loss and did identify any duty TDAFF owed Lindstrom outside those created by contract. *Lindstrom*, at *5. Then, in rejecting Lindstrom's bid to file his Proposed Second Amended Complaint, the Court noted that he still alleged only that he "suffered purely economic loss and add[ed] no new facts regarding extra-contractual duties or causation." (Dkt. 62 at 3). Lindstrom's opposition to the instant motion acknowledges that the Court has already so ruled, and "does not respond to the arguments [raised by Defendants] regarding negligence and gross negligence." (Dkt. 78-1 at 6). By itself, Lindstrom's failure to respond to Defendants' arguments on these counts in his Opposition constitutes waiver. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument [ ] results in waiver."). Lindstrom admits he has not responded to Defendants' arguments—no further analysis is necessary, and the claims can be dismissed on that basis alone. In addition, it is inappropriate to bring claims previously dismissed without attempting to cure the deficiencies the Court previously identified in its orders. Those same deficiencies remain and these claims are dismissed.

### III. Defendant TDA

Finally, Defendants argue that Lindstrom's claims against Defendant TDA should be dismissed because the TAC still does not adequately allege that TDA was responsible for any of

11

the claimed conduct. (Dkt. 74 at 12). The Court's prior opinion was clear: "the [FAC] allegations pertain almost exclusively to TDAFF. TDA receives nothing more than a few passing references. Most of the count-specific allegations never even mention TDA. The [FAC] leaves the Court unsure about why TDA is even a defendant in this case. The scant allegations against TDA do not satisfy the federal pleading standards, so all the claims against TDA are dismissed without prejudice." *Lindstrom*, 2020 WL 7398792 at *6. Plaintiff nonetheless kept TDA in this case and now admits that "no additional facts were alleged regarding Defendant TD Ameritrade, Inc., this brief will not argue that issue any further, and will simply adopt prior briefing on that issue (once again, to save the matter for any potential appeal)." (Dkt. 78-1 at 6). In short: TDA was dismissed, Plaintiff chose to keep TDA in the case despite making zero new allegations (studiously ignoring the Court's orders), and TDA is once again dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. (Dkt. 73). The Court allowed Lindstrom to bring this TAC if he could fix the deficiencies identified in the Court's prior orders. Instead, Lindstrom filed a TAC that is nearly identical to the Proposed Second Amended Complaint and at every turn misconstrued or blatantly ignored the Court's orders. As Lindstrom has had several opportunities to state a viable claim and has failed to do so, the Third Amended Complaint is dismissed with prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: July 6, 2022

12